541 A.2d 356

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Ronald MORMAN, Appellee.**

Superior Court of Pennsylvania.

Submitted March 8, 1988.

Filed May 2, 1988.

Frances Gralnek, Assistant District Attorney, Philadelphia, for Com., appellant.

Ronal Morman, in propria persona.

Before ROWLEY, WIEAND and MONTEMURO, JJ.

MONTEMURO, Judge:

The Commonwealth has taken this appeal from an Order of the Court of Common Pleas of Philadelphia County discharging the appellee on his writ of habeas corpus.[1]

We are asked to decide if the Commonwealth in a habeas corpus proceeding, wherein it is alleged that the Commonwealth failed to establish a *prima facie* case, is restricted to

1. It is settled law that the Commonwealth may appeal from an order discharging an accused upon a writ of habeas corpus. *Commonwealth v. Hess*, 489 Pa. 580, 589, 414 A.2d 1043, 1047 (1980).

the evidence which was produced at the preliminary hearing.

The appellee, Ronald Morman, was arrested by the Philadelphia Police Department and charged with Theft of Services; Receiving Stolen Property; Recklessly Endangering Another Person; and Risking a Catastrophe. These charges resulted when the Philadelphia Police Department requested that the Philadelphia Electric Department investigate an electric hook-up to a bus operating as a variety store in the City of Philadelphia. After examining the hook-up on September 25, 1986, the Electric Company representative was of the opinion that the hook-up was an illegal one. R.R. at 16a. On that same day, the hook-up was removed and Ronald Morman was arrested.

On October 21, 1986, Ronald Morman was afforded a preliminary hearing before the Honorable Francis P. Cadran of the Municipal Court of Philadelphia. At the preliminary hearing, the Commonwealth presented the testimony of the Electric Company representative who had investigated the allegedly illegal electric hook-up. This representative testified that due to the location of the hook-up in a residential area and the manner in which the hook-up was installed "there was a potential there for injury to anyone who may have been in that area." R.R. at 21a. At the conclusion of the Commonwealth's evidence, counsel for Morman argued that the Commonwealth had failed to establish a *prima facie* case because there was no evidence showing who owned the variety store bus. Thus, Morman's association with the alleged criminal conduct had not been sufficiently proven by the Commonwealth. The Commonwealth argued that because the Electric Company representative had testified that Morman was arrested on the same day that the hook-up was examined and removed, there was sufficient evidence to hold Morman for trial on the specified charges. R.R. at 26a. The Court found that a *prima facie* case had been established by the Commonwealth.

■ Thereafter, Morman filed a Motion to Quash Return of Transcript, contending that the Commonwealth had failed to establish a *prima facie* case at the preliminary hearing because no evidence had been presented concerning ownership of the variety store bus. It is clear that the proper means for testing the finding that the Commonwealth has sufficient evidence to establish a *prima facie* case is to petition the trial court for a writ of habeas corpus. *Commonwealth v. Hetherington,* 460 Pa. 17, 331 A.2d 205 (1975). In Philadelphia County, such habeas corpus petitions are entitled as Motions to Quash Return of Transcript from the Preliminary Hearing or Motions to Quash. Op. of Trial Court at 1.[2] Our review of the record in the instant case indicates that Morman was on bail at the time he filed his habeas corpus petition. In *Commonwealth v. Hess,* 489 Pa. 580, 414 A.2d 1043 (1980), our supreme court recognized that "restraints on an accused bound over for court and released on bail are sufficient to satisfy the custody requirement of a habeas corpus petition." *Id.,* 489 Pa. at 587, 414 A.2d at 1047 (citation omitted). *See also Commonwealth v. Orman,* 268 Pa.Super. 383, 408 A.2d 518 (1979).

A hearing concerning Morman's habeas corpus petition was held in the Philadelphia Court of Common Pleas on January 21, 1987. At this hearing, the Commonwealth had present a detective who was presumably prepared to testify that Morman had admitted that he was the owner and operator of the variety store bus and that he knew of the hook-up. R.R. at 31a. The Court refused to permit the detective to testify, ruling that Morman's habeas corpus petition would be decided on the evidence presented at the preliminary hearing alone. The trial court concluded that the Commonwealth had failed to establish a *prima facie* case against Morman at the preliminary hearing and, as a result, the court granted the writ of habeas corpus, thus

---

2. In *Commonwealth v. Orman,* 268 Pa.Super. 383, 408 A.2d 518 (1979), this Court held that, without reference to county court procedures, where the substance of a "Motion to Quash the Transcript" is identical to that of a petition for a writ of habeas corpus, the trial court may properly consider the petition a habeas corpus petition and grant relief accordingly.

discharging Morman. We find that the trial court did err in the case before us and, therefore, we reverse.

The scope of the evidence which may be received in a pretrial habeas corpus hearing has never been specifically addressed by our appellate courts.[3] As a starting point, we must recognize the importance and the history of the writ of habeas corpus in our system of government. "The writ of habeas corpus has been called the 'great writ.' It is an ancient writ, inherited from the English common law, and lies to secure the immediate release of one who is detained unlawfully." P.L.E. Habeas Corpus § 2. *See* 42 Pa.C.S.A. § 6502(a). In *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the United States Supreme Court expressed its view of the principle which underlies the federal constitution's habeas corpus provision:

> Although in form the Great Writ is simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liberty ... Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release ...

*Id.* at 402, 83 S.Ct. at 829. It is beyond question that our government has and, of necessity, must have, the authority and the power to imprison or to otherwise interfere with the personal liberty of an individual when there is a need for such action. However, if the government, without lawful cause, restrains the liberty of an individual, that individual may find himself powerless to secure his own release if it were not for the remedy of the writ of habeas corpus. The

---

**3.** We note the case of *Commonwealth v. Marker,* 25 Pa.D. & C.3d 119 (1982). In *Marker,* the Court of Common Pleas of Somerset County considered the precise issue raised by this appeal and decided that in a habeas corpus proceeding in which the Commonwealth's failure to establish a prima facie case at the preliminary hearing is alleged, the proceeding is *not* limited to the evidence produced at the preliminary hearing. "Such a restriction would ... be inconsistent with the historical importance and the purpose of the great 'freedom writ' 'to inquire into the cause of detention of any person....'" *Id.* at 123.

writ of habeas corpus exists to vindicate the right of personal liberty in the face of unlawful government deprivation. We note that in our Commonwealth, the Habeas Corpus Act, as enacted in 1785,[4] contained a preamble which expressly recognized the role of the writ of habeas corpus in the protection of personal liberty: "personal liberty is a principle blessing derived from free constitutions of government, and certain methods of proceeding should be prescribed, so that all wrongful restraints thereof may easily and speedily be redressed." *See Commonwealth v. Hess, supra* 489 Pa. at 585, 414 A.2d at 1045–1046. Thus, the right to the protections afforded by the writ of habeas corpus have long been part of our Commonwealth's history. *Id.*

■ In the instant case, Morman was afforded a preliminary hearing. The purpose of a preliminary hearing is much the same as the purpose of the pretrial petition for habeas corpus relief. As has often been stated:

> The primary reason for the preliminary hearing is to protect an individual's right against unlawful arrest and detention. It seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection. . . .

*Commonwealth v. Hess, supra,* 489 Pa. at 586, 414 A.2d at 1046 (quoting *Commonwealth ex rel. Maisenhelder v. Rundel,* 414 Pa. 11, 15, 198 A.2d 565, 567 (1964)). At the hearing on Morman's habeas corpus petition, the trial court believed its role was to examine the evidence presented at his preliminary hearing and, on that basis, determine whether Morman's custody was a lawful one. We find that the scope of evidence which a trial court may consider in determining whether to grant a pretrial writ of habeas corpus is *not* limited to the evidence as presented at the preliminary hearing. On the contrary, we find that the

4. Act of February 18, 1785, 2 Smith's Laws 275, §§ 1 *et seq.;* as amended, 12 P.S. §§ 1871 *et seq.* (1967); repealed by J.A.R.A. effective June 27, 1978, recodified as 42 Pa.C.S.A. §§ 6501 *et seq.* (1979 Pamphlet).

Commonwealth may present additional evidence at the habeas corpus stage in its effort to establish at least *prima facie* that a crime has been committed and that the accused is the person who committed it. Our conclusion in the instant case is a result of our review of the relevant case law as well as the underlying purpose of the writ of habeas corpus in the pretrial setting.

■ In *Commonwealth ex rel. Scolio v. Hess*, 149 Pa.Super. 371, 27 A.2d 705 (1942), this Court reviewed the grant of a writ of habeas corpus. In that case, Vincent Scolio had petitioned the trial court pursuant to the Act of July 1, 1937, P.L. 2664, 12 P.S. § 1892 et seq. This statute, later repealed, expressly empowered the trial judge to "examine and inquire into the proceedings held and the evidence produced before a committing magistrate and to discharge the prisoner, if the proceedings were not conducted in accordance with the law or the evidence is insufficient to hold him." *Id.*, 149 Pa.Superior Ct. at 373, 27 A.2d at 706. This Court reviewed the evidence presented at the habeas corpus hearing, which consisted entirely of the evidence produced at Scolio's preliminary hearing because it did not "appear from the record certified to us that any other testimony was presented." *Id.*, 149 Pa.Superior Ct. at 374, 27 A.2d at 706. In upholding the grant of the writ of habeas corpus, this Court stated the following:

> We have carefully read the testimony in the record certified to us and are of the opinion that it did not justify the order of the alderman holding the relator for court; and, *as nothing more was produced before the court below,* that it was not sufficient to warrant his being remanded for trial by a petit jury. We do not mean to hold that on a hearing before a committing magistrate *or on a habeas corpus hearing,* the Commonwealth must produce evidence of such character and quantum of proof as to require a finding by a jury of the accused's guilt, beyond a reasonable doubt. But it should be such as to present "sufficient probable cause to believe, that the person charged has committed the offence stated". . . .

*Id.*, 149 Pa.Superior Ct. at 374, 27 A.2d at 707 (citation omitted) (emphasis added). In the statements of this Court as quoted above, it is evident that we interpreted the scope of evidence admissible at the habeas corpus hearing as extending beyond the evidence presented at the preliminary hearing stage. This construction of the scope of evidence is consistent with the nature of the relief which is sought by petitioning a court for a writ of habeas corpus: "... the question on habeas corpus must be directed to the legality of the detention *then in effect* and from which the release is sought." *Commonwealth ex rel. Levine v. Fair,* 186 Pa. Super. 299, 304, 144 A.2d 395, 398 (1958) (emphasis added), *rev'd* 394 Pa. 262, 146 A.2d 834 (1958). The focus of the court in a habeas corpus hearing is properly upon the legality of the existing restraint on the petitioner's liberty and not solely upon a review of what occurred at a prior preliminary hearing. In the pretrial setting, the focus of the habeas corpus hearing is to determine whether sufficient Commonwealth evidence exists to require a defendant to be held in government "custody" until he may be brought to trial. To make this determination, the trial court should accept into evidence the record from the preliminary hearing as well as any additional evidence which the Commonwealth may have available to further prove its *prima facie* case.

We are guided in reaching our decision in the instant case by the opinion of our supreme court in *Commonwealth v. Ruza,* 511 Pa. 59, 511 A.2d 808 (1986). In *Ruza,* the appellee had not been provided with a preliminary hearing. As a result, the appellee filed an Omnibus Pre–Trial Motion which included a Habeas Corpus Motion to Quash the Informations due to lack of a preliminary hearing. In *Ruza,* the following pretrial procedure had taken place:

A hearing was held on the Omnibus Pre–Trial Motion, lasting two days. In its Findings of Fact and Conclusions of Law, the trial court specifically addressed the question of whether, notwithstanding the lack of a preliminary hearing, a *prima facie* case existed against Appellee. The court found that the evidence adduced at the Omni-

bus Pre–Trial Hearing was more than sufficient to establish a *prima facie* case. . . .

*Id.*, 511 Pa. at 64, 511 A.2d at 810. The supreme court, citing *Commonwealth v. Hess, supra,* held that the trial court had not erred in refusing to discharge the appellee even though appellee had not been provided with a preliminary hearing. The supreme court quoted the following language from *Commonwealth v. Hess, supra* 489 Pa. at 589–590, 414 A.2d at 1048:

> In the unlikely event the district justice and the court of common pleas, having the habeas corpus application, were both in error in their assessment of the Commonwealth's evidence against the accused, the trial would not proceed beyond the demurrer stage . . . If in fact it is determined at trial that the evidence is sufficient to be submitted to the jury, then any deficiency in the presentation would have been harmless.

*Ruza, supra* 511 Pa. at 65, 511 A.2d at 811. The *Ruza* court found that because the appellee had "received a pre-trial determination that a *prima facie* case existed against him" that "all the safeguards that a preliminary hearing affords were observed." *Id.* We apply the reasoning of our supreme court in *Ruza* instantly. Although we need not decide whether the evidence presented by the Commonwealth at Morman's preliminary hearing was sufficient to establish a *prima facie* case against Morman, we will assume *arguendo* that it was not. Even so, the Commonwealth, having obtained a judicial determination that it had established a *prima facie* case, acted properly in continuing to pursue its prosecution of Morman. Morman petitioned for a writ of habeas corpus and, at that point, the safeguard of a second judicial determination of the sufficiency of the Commonwealth's evidence against Morman, prior to trial, was afforded. If the Commonwealth can introduce additional evidence at a habeas corpus hearing to fill alleged holes in its *prima facie* case, then "any deficiency in the presentation before the district justice would have been harmless." *Commonwealth v. Hess, supra* 489 Pa. at

589–590, 414 A.2d at 1048. If the habeas corpus court determines that a *prima facie* case in fact exists against an individual, then the individual has obtained a judicial review of the legality of the government's restraint upon his personal liberty. The invaluable purpose of the request for habeas corpus relief has thus been achieved.

In the case at bar, the trial court erred in limiting the scope of the Commonwealth's evidence at the hearing held on Morman's habeas corpus petition. As a result, we vacate the order of the trial court granting Morman's motion to quash return of transcript, entered on January 21, 1987, and remand for further proceedings consistent with this opinion.

Jurisdiction is relinquished.