580 A.2d 412

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Darryl G. OWEN.**

Superior Court of Pennsylvania.

Submitted April 9, 1990.

Decided Sept. 24, 1990.

W. Jeffrey Yates, Asst. Dist. Atty., Bellefonte, for Com., appellant.

Roy K. Lisko, State College, for appellee.

Before TAMILIA, HOFFMAN and CERCONE, JJ.

HOFFMAN, Judge:

This appeal by the Commonwealth is from the order below granting appellee Darryl G. Owen's petition for a writ of habeas corpus and dismissing the driving under the influence charges filed against him. The Commonwealth contends that the court below erred in determining that the Commonwealth failed to establish a *prima facie* case against appellee in that it did not demonstrate that the alleged offense occurred on a "highway" or "trafficway" as required by the Motor Vehicle Code. *See* 75 Pa.C.S.A. § 101 et seq. For the reasons set forth below, we affirm.

On February 3, 1989, a criminal complaint was filed against appellee, charging him with driving under the influence of alcohol. *See* 75 Pa. C.S.A. § 3731(a)(1), (a)(4). The charges arose in connection with Owen's operation of a vehicle in the Nittany Silver Parking Lot in University Park, Centre County, Pennsylvania, on January 27, 1989. A preliminary hearing was held before a District Justice on March 8, 1989, and Owen was bound over on the charges. Owen then filed a petition for a writ of habeas corpus, alleging that the Commonwealth had failed to establish a *prima facie* case because it did not make a showing that the offense occurred on a "highway" or "trafficway" as required by 75 Pa. C.S.A. § 3101. On April 17, 1989, the Centre County Court of Common Pleas held a hearing on the habeas petition. Thereafter, on May 18, 1989, the court filed an order and opinion granting the writ of habeas corpus and dismissing the charges. This appeal by the Commonwealth followed.[1]

We have noted that, "[i]n the pre-trial setting, the focus of the habeas corpus hearing is to determine whether

---

1. It is settled that the Commonwealth may appeal from an order discharging a defendant on a writ of habeas corpus. *See Commonwealth v. Hess,* 489 Pa. 580, 414 A.2d 1043 (1980); *Commonwealth ex rel. Bryant v. Hendrick,* 444 Pa. 83, 280 A.2d 110 (1971); *Commonwealth v. Oeler,* 357 Pa.Super. 281, 515 A.2d 977 (1986).

sufficient Commonwealth evidence exists to require a defendant to be held in government 'custody' until he may be brought to trial." *Commonwealth v. Morman*, 373 Pa.Super. 360, 367, 541 A.2d 356, 360 (1988). A pre-trial petition for a writ of habeas corpus thus is similar in purpose to a preliminary hearing. *Id.*, 373 Pa.Superior Ct. at 365, 541 A.2d at 359. And, of course, " '[t]he primary reason for the preliminary hearing is to protect an individual's right against unlawful arrest and detention. It seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection....' " *Id.* (citations omitted). The *Morman* Court also made clear that, in making this pre-trial determination, the habeas court is not limited to reviewing the evidence presented at the preliminary hearing; instead, "the Commonwealth may present additional evidence at the habeas corpus stage in its effort to establish at least *prima facie* that a crime has been committed and that the accused is the person who committed it." *Id.*, 373 Pa.Superior Ct. at 365–66, 541 A.2d at 359.

The Commonwealth contends that the court below erred in concluding that it had failed to make a *prima facie* showing that the offense in question occurred on a "highway" or "trafficway". Owen was charged with driving under the influence, which is a "serious traffic offense" under the Code. *See* 75 Pa. C.S.A. § 3101(b). Section 3101(b) further states that the provisions of the Code relating to serious traffic offenses "shall apply upon highways and trafficways throughout this Commonwealth." The definitional section of the Code defines a "highway" as:

> The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.

*Id.* § 102. A "trafficway", in turn, is defined as:

> The entire width between property lines or other boundary lines of every way or place of which any part is open

to the public for purposes of vehicular travel as a matter of right or custom.

*Id.*

 The issue presented concerns the nature of the parking lot in which Owen was stopped. Specifically, the question is whether the Commonwealth demonstrated that the lot was "open to the use of the public for purposes of vehicular travel" (a highway) or was "open to the public for purposes of vehicular travel as a matter of right or custom" (a trafficway). After meticulously reviewing the record in this case, we must conclude that the Commonwealth did not make such a showing.

With regard to the sufficiency of proof required to establish a *prima facie* case at a preliminary hearing, this Court has noted that:

> The quantity and quality of evidence presented there "should be such that if presented at trial in court, and accepted as true, the judge would be warranted in allowing the case to go to the jury." *Commonwealth ex rel. Scolio v. Hess*, 149 Pa.Super. 371, 27 A.2d 705 (1942). The Commonwealth's burden at a preliminary hearing is to establish at least prima facie that a crime has been committed and that the accused is the one who committed it. *Commonwealth v. Mullen*, 460 Pa. 336, 333 A.2d 755 (1975). This means that at a preliminary hearing, the Commonwealth must show the presence of every element necessary to constitute each offense charged and the defendant's complicity in each offense. Proof beyond a reasonable doubt is not required, nor is the criterion to show that proof beyond a reasonable doubt is possible if the matter is returned for trial. *However, proof, which would justify a trial judge submitting the case to the jury at the trial of the case, is required.* Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, *Commonwealth v. Rodgers*, 235 Pa.Super. 106, 340 A.2d 550 (1975), and the evidence must be read in the light most favorable to the Commonwealth's case. *Common-*

*wealth v. Zeringo,* 214 Pa.Super. 300, 257 A.2d 692 (1969). *Prosecutorial suspicion and conjecture are not evidence and are unacceptable as evidence.*

Our function is to take *the facts proven by the Commonwealth at the preliminary hearing* and to determine whether the sum of those facts fits within the statutory definition of the types of conduct declared by the Pennsylvania legislature in the Crimes Code to be illegal conduct. *If the proven facts fit the definition of the offenses with which the appellees are charged, then a prima facie case was made out as to such offense or offenses.* If the facts do not fit the statutory definitions of the offenses charged against the [defendant], then the [defendant] [is] entitled to be discharged.

*Commonwealth v. Snyder,* 335 Pa.Super. 19, 23–24, 483 A.2d 933, 935 (1984) (emphasis supplied) (*quoting Commonwealth v. Lynch,* 270 Pa.Super. 554, 581–82, 411 A.2d 1224, 1238–39 (1979) (plurality opinion), *aff'd in part, rev'd in part sub nom. Commonwealth v. Wojdak,* 502 Pa. 359, 466 A.2d 991 (1983) (plurality opinion)); *see also Commonwealth v. Wojdak, supra* (to prove *prima facie* case, Commonwealth must show existence of each material element of charge; "the absence of evidence as to the existence of a material element is fatal.").

The difficulty here is that the habeas court was presented with *no* competent evidence concerning the nature of the parking lot where appellee was stopped by police. As we have noted above, the preliminary hearing in this matter was held on March 8, 1989. The district justice's return of transcript, filed pursuant to Pa.R.Crim.P. 146, indicates that only one witness, Pennsylvania State University police officer Jeffrey Jones, was sworn and testified at that preliminary hearing. However, Officer Jones' testimony apparently was not transcribed, and the Commonwealth did not otherwise attempt to introduce the substance of the testimony at the habeas hearing. Moreover, the other documents attached to the return of transcript (i.e., the criminal complaint and the "arrest warrant affidavit" containing a state-

ment of probable cause), contain no description of the parking lot or other evidence regarding whether the lot was open to the public.

■ Similarly, a review of the notes from the April 17, 1989 hearing on the habeas petition reveals no evidence concerning the parking lot.[2] The hearing consisted entirely of legal argument from counsel concerning whether a parking lot could be considered a trafficway or highway. Legal argument, of course, is no substitute for *proof,* and this legal argument had absolutely no factual foundation. Although there was some *discussion* concerning whether the parking lot was open to the public, the Commonwealth introduced no witnesses or other evidence. Moreover, the parties did not stipulate to a description of the lot and its usage, nor did they ask the court to take judicial notice of the characteristics of the lot in question. In addition, the Commonwealth did not seek to move into evidence notes or other evidence from the preliminary hearing. Thus, the habeas court was not even in a position to evaluate the sufficiency of the evidence produced at the preliminary hearing.[3] We are aware, of course, that the evidentiary

2. The transcript from the April 17 hearing is not part of the certified record on appeal. Because the official record does not contain the notes from either the preliminary hearing or the habeas hearing, we could affirm the order below simply based on the Commonwealth's failure to provide an adequate record for us to review. *See Commonwealth v. Williams,* 357 Pa.Super. 462, 516 A.2d 352 (1986). We note, however, that the Commonwealth has appended an unofficial copy of the notes from the habeas hearing to its brief, and Owen does not dispute the accuracy of the unofficial transcript. Because an examination of the unofficial notes makes clear that the Commonwealth utterly failed to prove the existence of a *prima facie* case and because there is no dispute concerning the accuracy of this unofficial transcript, we are satisfied that reliance on it to evaluate the sufficiency of the Commonwealth's proof at the habeas hearing is not inappropriate. *Cf. Commonwealth v. Garbett,* 256 Pa.Super. 488, 498 n. 8, 390 A.2d 208, 212 n. 8 (1978) (plurality opinion).

3. The inadequacy of the record created by the Commonwealth calls into question the accuracy of certain of its factual statements. For example, the Commonwealth asserts in its appellate brief that the lot in question "is a reserved parking lot from 5 a.m. to 5 p.m." *See* Brief for Appellant at 10. The suggestion, of course, is that the lot otherwise was open to the public. If this assertion was supported by record evidence, we undoubtedly would have to reverse. However, as

requirements at a preliminary hearing, and at a habeas hearing, are somewhat relaxed. Nevertheless, as we have noted above, in order to carry its burden of demonstrating a *prima facie* case the Commonwealth still must offer *some proof* to establish each material element of the offenses charged. *See Commonwealth v. Snyder, supra; see also Commonwealth v. Wojdak, supra.* This the Commonwealth utterly failed to do. Accordingly, we see no basis upon which to reverse the court's order granting the habeas petition.[4, 5]

For the foregoing reasons, we affirm the order below.

Order affirmed.

TAMILIA, J., files a dissenting Opinion.

TAMILIA, Judge, dissenting:

I respectfully but vigorously dissent to the majority Opinion affirming the trial court's Order granting appellant's petition for writ of habeas corpus. Contrary to the majority, I would reverse and remand the case for trial.

This is an appeal from the May 18, 1989 Order of court granting appellee's petition for writ of habeas corpus. On January 27, 1989, at approximately 5:53 p.m., a Pennsylva-

noted in the text, there is no evidence regarding when, and to whom, the lot was open.

**4.** The court below did not grant the petition based on the Commonwealth's failure to produce evidence, but instead found that the parking lot was a restricted student parking lot that was not customarily open to the public. It is settled, however, that a reviewing court may affirm a decision of the trial court if the result is correct on any ground. *See, e.g., Commonwealth v. Terry,* 513 Pa. 381, 521 A.2d 398 (1987), *cert. denied sub nom. Terry v. Pennsylvania,* 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987).

**5.** We should emphasize the limited nature of our holding. We are aware that prior decisions in this Commonwealth have held that a parking lot may be considered a trafficway for purposes of the Motor Vehicle Code. In all of these cases, however, there was a finding that the lot in question was open to the public. *See, e.g., Commonwealth v. Wilson,* 381 Pa.Super. 253, 553 A.2d 452 (1989), *allocatur denied* (June 30, 1989); *Commonwealth v. Baughman,* 357 Pa.Super. 535, 516 A.2d 390 (1986); *see also Commonwealth, Dept. of Transp. v. Bendik,* 112 Pa.Commw. 591, 535 A.2d 1249 (1988). In the case at bar, by contrast, there simply is *no* record evidence to support such a finding.

nia State University police officer observed appellee as he attempted to enter his car which was parked in the Nittany Silver parking lot, a small parking lot located on the university campus next to a dormitory. Appellee was swaying back and forth as he stood by his car while trying to locate his keys. He retrieved them from his coat pocket and spent approximately three minutes just getting the driver's door open. Once appellee was in the car, he turned the headlights on and off twice, raced the engine, backed up the car and then "squealed" the tires pulling out. The police officer effectuated a traffic stop, observed appellee's disheveled appearance and combativeness and asked him to perform certain field sobriety tests. Upon appellee's failure to pass any of the three tests, the police officer arrested appellee and transported him to a local hospital, where a blood sample indicated appellee's blood alcohol level was .173 per cent. Based on his observations, the test results and the blood sample results, the police officer, on February 3, 1989, swore out an arrest warrant for appellee for driving under the influence.[1]

At a preliminary hearing on March 8, 1989, the district justice bound appellee over on the charges. Appellee petitioned the court for a writ of habeas corpus challenging the district justice's holding him for court. As grounds for his petition, appellee asserted the Commonwealth failed to establish a prima facie case against him because the offense did not take place on a "highway" or "trafficway" as required under the Motor Vehicle Code.[2] The court granted

1. 75 Pa.C.S. § 3731(a)(1)-(4).

2. The majority affirms the trial court as no evidence was adduced in the magistrate's hearing on the record to establish the parking lot was open to the public for purposes of vehicular traffic as a matter of right or custom. Neither the appellant nor appellee have contested the factual allegations of this case but are relying on the legal intent of the statute. As such, a campus parking lot, no less than a motel parking lot, *Commonwealth Dept. of Transportation v. Bendik,* 112 Pa.Commw. 591, 535 A.2d 1249 (1988), or a club parking lot, *Commonwealth v. Wilson,* 381 Pa.Super. 253, 553 A.2d 452 (1989), has generally accepted attributes.

The need for a record to be made to establish specifically and in detail the attributes of this parking lot is, therefore, no more neces-

appellee's petition by Order dated May 18, 1989. The Commonwealth brings this appeal, having certified in good faith that the court's Order terminates and substantially handicaps the Commonwealth's prosecution of appellee. *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985); *Commonwealth v. Deans,* 388 Pa.Super. 521, 565 A.2d 1230 (1989).

The Commonwealth contends the court erred in granting appellee's petition because the parking lot is a highway or trafficway within the meaning of the statute. The Motor Vehicle Code provides:

§ 3101. Application of part

(a) General rule.—Except as provided in subsection (b), the provisions of this part relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except where a different place is specifically referred to in a particular provision.

(b) Serious traffic offenses.—The provision of Subchapter B of Chapter 37 (relating to serious traffic offenses) shall apply upon highways and trafficways throughout this Commonwealth.

75 Pa.C.S. § 3101. Highways and trafficways are defined as:

§ 102. Definitions

. . .

"Highway" The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.

"Trafficway" The entire width between property lines or other boundary lines of every way or place of which any

sary than the need to take detailed evidence as to the attributes of any street or highway where a violation occurred. Stating what it is is sufficient, unless a party raises specific questions which place the matter in issue.

part is open to the public for purposes of vehicular travel as a matter of right or custom.

75 Pa.C.S. § 102. I conclude, without question, the evidence establishes the incident occurred in a place open to the public for purposes of vehicular travel as a matter of right or custom. The majority would require that extensive evidence be introduced to establish the nature of the parking lot and the degree of public access to bring it within the meaning of the statute. I believe the statute is broad enough to comprehend *any* parking lot, and establishes that a parking lot used by motor vehicles and any persons, even if limited to students or university personnel, creates the necessary element for the purpose of establishing a prima facie case.

The record shows the Nittany Silver parking lot is a restricted student parking lot provided for the use of dormitory residents. However, the parking lot is restricted only from 5 a.m. to 5 p.m. Otherwise, the lot is open to public use. Moreover, even if restricted by signs, a parking lot is a trafficway for purposes of section 3101 if it is used by members of the public. *Commonwealth v. Wilson,* 381 Pa.Super. 253, 553 A.2d 452 (1989). In *Wilson,* the appellant was arrested and charged with driving under the influence after operating a car in a parking lot marked with private signs. The *Wilson* Court stated:

> It would raise form to towering levels above substance if parking lots, in which vehicular traffic is encouraged and occurs, sometimes at high rates of speed, were to become "DWI-free zones," in which drunk driving is tolerated from entrance to exit. Such a construction would seriously undermine the effectiveness of any drunk driving prohibitions.

*Id.,* 381 Pa.Superior Ct. at 257, 553 A.2d at 454.

The definition of "trafficway" in § 102 clearly allows for inclusion of public parking lots because such lots are clearly the "width between property lines or other boundary lines of every way or place of which any part is open to the

public for purposes of vehicular travel as a matter of right or custom."

Appellee would limit this lot only to the permissible residents of an adjoining dormitory. No evidence is adduced that only such residents could use the lot. Private property signs or restricting use to customers cannot limit the application of section 102, *see Wilson, supra,* and neither can stickers or restricted parking designations, on what is essentially a public area, achieve that result.

As pointed out above, the parking lot was unrestricted at the time of the arrest. Appellee does not contest this fact. I would find the parking lot had changed from a limited public use to a general use parking lot. (I would not hold, however, that had appellant been arrested during the restricted time period, our result in this case would have been any different.) Stickers or parking zones cannot be the basis upon which to restrict a trafficway or roadway from application of the DUI statutes. If this were so, a major portion of city streets in Pittsburgh and Philadelphia in congested residential areas and surrounding universities, colleges and hospitals would be off-limits to arrest for DUI when a person was in one of those areas. The parking areas of some of our large housing developments, public and private, likewise would be insulated. Such a holding now requires of the police awaiting the crossing of a multitude of imaginary lines by drunken drivers to effect stops or arrests if they were to be upheld by the court.

As it was held in *Commonwealth v. Mikulan,* 504 Pa. 244, 470 A.2d 1339 (1983), an important purpose of the laws on drunk driving is to deter drunk driving and to retard the wanton and senseless slaughter of and injury to innocent people upon our highways caused by drunk drivers. *Id.,* 504 Pa. at 248, 470 A.2d at 1341. It is unthinkable that the legislature would have conceived legislation imposing such restrictions and limitations on the reasonable implementation of their legislative intent. The respected jurist, the Honorable Carson Brown, in discussing the implications of his decision, expressed serious, if not grave, misgivings

over the possibility that a person could be struck and killed in a parking lot by a drunk driver and yet escape liability for his actions (H.T., 4/17/89, p. 7). To eliminate the uncertainty and resolve ambiguity, it is necessary to place a different interpretation on the use of the parking lot than did the trial judge. Judge Brown, in making his findings, relying on a previous decision he had rendered (*Commonwealth v. Roesch*, 18 Pa. D. & C.3d 59 (C.P. Centre County 1981)), found the lot was not customarily used by the public. This interpretation at least outwardly distinguishes the present case from *Wilson*. I disagree with that interpretation.

I would hold that the residents of the dormitory *are* part of the public as well as visitors, repairman, pizza delivery persons or any of the myriad of other persons who have access to that lot. It is inconceivable that with the incredible number of automobiles in use in our society today and the increasing dedication of extensive areas for parking purposes with accompanying schemes of limitation and restrictions as to use, that the law would permit such areas to be insulated from the consequences of drunk driving. We are no less subject to all of the harms to be prevented by application of the DUI laws in parking lots than on busy highways or city streets. My distinguished colleagues, in refusing to acknowledge that a parking lot *per se* cannot be distinguished from a city street, have created a free zone for drunk drivers. They would emasculate the law by ignoring the facts.

A case could be made that a driver or pedestrian should be even more cautious and sober in large parking lots than on city streets because of the high concentration of cars and people and the inevitable crisscrossing between the two. In *Commonwealth Dept. of Transportation v. Bendik*, 112 Pa.Commw. 591, 535 A.2d 1249 (1988), the Commonwealth Court ruled that a parking lot was a trafficway because it was open to the public and vehicular traffic did occur on it. I believe this holding and that of *Wilson, supra*, supports my position that despite restrictions which may be imposed as to the class of persons permitted to park in a particular

area, customary use by the public means those persons in the restricted class as well as any other persons reasonably expected to have vehicular access to the property. Neither the size of the lot, its administrative restrictions, its attachment to a residential unit, business or institution for the use of the persons using that facility nor the class of persons privileged to use the lot insulate intoxicated persons from the DUI laws pursuant to 75 Pa.C.S. § 3731. There is no need, therefore, to establish in a preliminary hearing the nature of the traffic or business conducted on a parking lot.

I would, therefore, reverse the trial court's Order granting appellee's petition for writ of habeas corpus and dismissing the charges against him. This case should be remanded for trial.