## Commonwealth v. Payne

504

C.P. of Fayette County, no. 351 of 2004.

*Nancy Duffield Vernon, district attorney,* for Commonwealth.

*Samuel J. Davis,* for defendant.

LESKINEN, *J.,* March 17, 2005—

## CORRECTED OPINION & ORDER

[This corrected opinion and order is filed because some of the dates in the opinion and order filed March 16, 2005 were incorrect.]

And now, March 17, 2005, upon consideration of defendant's omnibus pretrial motion for writ of habeas corpus and for suppression, the 146-page transcript of the preliminary hearing submitted at the hearing on said motion, and the briefs of counsel submitted on October 13, 2004 and November 12, 2004; the court hereby finds that the Commonwealth has established that the statements were voluntary by a preponderance of the evidence and the Commonwealth has presented sufficient evidence to support a prima facie case as to the charge of criminal homicide. A brief recitation of the evidence is necessary to an understanding of the issues raised: On June 5, 2003, in the early morning, the defendant's neighbor, Vic Benco, called the police to report that the defendant had found the body of her husband, Harold Eugene Payne, in his bed with a single gunshot wound to the head. The defendant and her son were the only persons present in the home at the time. Defendant was interviewed, and she provided a statement to the police on that date. Subsequently, after scientific analysis of the evidence found

at the crime scene, upon the defendant's person, and in her purse, an arrest warrant was issued for her. She was invited to return to the state police barracks on December 17, 2003, gave another oral statement, and was subsequently arrested on the previously issued warrant. Portions of the defendant's statements were used as part of the Commonwealth's case at the preliminary hearing.

The first issue, logically, must be the admissibility of the defendant's statements, since the statements could not be part of the proof of a prima facie case if they are suppressed. As noted above, the only evidence offered by the Commonwealth was the transcript of the preliminary hearing, from which this court makes the following findings:

(1) On June 5, 2003, the defendant was asked to go to the barracks to be interviewed, and did not initially want to go.

(2) When advised repeatedly that such an interview was "just normal procedure," she reluctantly, but voluntarily, agreed to go, and was transported to the barracks by one of the officers.

(3) Corporal Beverly Ashton provided defendant with coffee when the defendant complained of a dry mouth.

(4) The actual interview of June 5, 2003, was conducted at the state police barracks by Trooper Thomas Maher and Corporal Tobin. Defendant was "visibly shaken."

(5) The defendant was not in custody on June 5, 2003, but was interviewed for investigatory purposes. There is no evidence that she was the focus of the investigation at

the time of the interview, and there is no testimony to indicate that she was given *Miranda* warnings.

(6) Defendant was subsequently interviewed on December 17, 2003, after the warrant for her arrest had been issued.

(7) That interview was also conducted at the Pennsylvania State Police barracks, where the defendant appeared voluntarily at the request of the officer.

(8) *Miranda* rights were read to the defendant, and she signed a waiver of those rights at 12:15 p.m. on that date. In addition to Trooper Maher, Corporal Beverly Ashton was also present. In addition to signing the waiver, the defendant also acknowledged understanding the *Miranda* rights orally, and she agreed to answer questions and give a statement.

The court notes that the quantity of evidence offered on the issue of suppression is unusually small. Neither party offered additional testimony at the hearing before the court, but both chose to rely on the transcript of the preliminary hearing, where suppression of the statements was not properly at issue. That said, the evidence that the statements were voluntarily given, and that the *Miranda* requirements were properly observed on December 17, 2003, is essentially unchallenged on this record. For these reasons, the court has no option but to hold that the Commonwealth has established the admissibility of the statements by a preponderance of the evidence at this point. Of course, the defendant may still choose to challenge the voluntariness of the statements at trial.

The pretrial issue most strenuously argued by the defense is whether or not the Commonwealth presented

sufficient evidence at the preliminary hearing to justify submitting the charge of criminal homicide to a jury. The standard for determining whether or not the Commonwealth has established a prima facie case at a preliminary hearing is well established:

"At the pretrial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to put forth a prima facie case of the defendant's guilt. *Commonwealth v. McBride,* 528 Pa. 153, 595 A.2d 589, 591 (1991). A prima facie case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense. *Id.* (citing *Commonwealth v. Wojdak,* 502 Pa. 359, 466 A.2d 991 (1983)). The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury. *Commonwealth v. Marti,* 779 A.2d 1177, 1180 (Pa. Super. 2001). Moreover, '[i]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.' *Id.* at 1180 (quoting *Commonwealth v. Owen,* 397 Pa. Super. 507, 580 A.2d 412, 414 (1990))." *Commonwealth v. Huggins,* 575 Pa. 395, 836 A.2d 862, 866 (2003).

In turn, this standard is essentially identical to the standard for determining the sufficiency of the evidence after a conviction at trial:

"The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence ad-

mitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Nahavandian,* 849 A.2d 1221, 1229-30 (Pa. Super. 2004). (citations omitted)

The two major complaints made by the defense are that the coroner's opinion (that the death was not a suicide) is not credible, and that the evidence of the defendant being the shooter is purely circumstantial.

The coroner who testified is Dr. Cyril Wecht, whose qualification as an expert pathologist cannot reasonably be challenged. (At the very least, his qualifications cannot be challenged when the issue is a prima facie case.) It was his expert opinion that the gunshot wound to the decedent's head was not self-inflicted because the stip-

pling pattern around the wound indicated the muzzle of the firearm was six to 12 inches away from the decedent's head when it was fired; and because, in the 5,000 (or more) autopsies of gunshot victims that Dr. Wecht has performed or reviewed, no suicide victim had ever held the gun that far away.

In addition to the testimony of Dr. Wecht, the position of the decedent in the bed is arguably inconsistent with a self-inflicted wound, as the deceased would have had to release the gun and then place his arm under his body *after* fatally shooting himself in the head.

Further evidence that the fatal gunshot wound was not self-inflicted overlaps with the circumstantial evidence of the defendant's participation in the shooting. Specifically, the defendant denied being in the room when the shot was fired, but unexplained gunshot residue was found on the sweatshirt defendant was wearing in 46 separate places, as well as on the palms of both of her hands. (When confronted with the gunshot residue evidence on December 17, 2003, defendant stated: "I know this looks bad for me, I just don't understand. I would arrest me too. I would like to tell you, but I can't. I just can't remember. Who do I call if I remember?")

Although the evidence is wholly circumstantial, the evidence that the defendant was very near when the gun was fired is strong. Defendant was found with latex gloves in her purse, which could explain the lack of her fingerprints on the weapon. Defendant freely discussed her husband's addiction to crack cocaine and how he had allowed that addiction to destroy the family's financial security. In addition, there were three notes in her purse that would arguably provide other motives for her to kill

her husband (one note referred to a sexual affair husband allegedly had with a woman who was HIV positive and dying of AIDS, and the other two notes are interpretable as suicide notes evidencing advance deliberation and consciousness of guilt by the defendant).

Essentially, the Commonwealth's case at the preliminary hearing can be summarized as evidence that the defendant had several motives, the means, and the opportunity to kill her husband; that he did not kill himself; and, that there were no other persons found who had a motive, a means, or an opportunity to kill him.

The Commonwealth's case is admittedly based wholly on circumstantial evidence, but, as noted above, that is perfectly permissible and appropriate.

"The Commonwealth need not prove the homicide by direct evidence; indeed in many instances, no witnesses are available to describe the incident which resulted in the death of the victim. Rather the Commonwealth may prove the homicide by circumstantial evidence. . . . The Commonwealth may establish the fact of a homicide by proving the death of the victim and establishing that the death resulted from criminal means. . . ." *Commonwealth v. Smith,* 523 Pa. 577, 581-82, 568 A.2d 600, 602 (1989). (citations omitted)

Moreover, it has been held that "[c]ircumstantial evidence suffices to prove any element *or all the elements* of the crime of homicide." *Commonwealth v. Crawley,* 514 Pa. 539, 551, 526 A.2d 334, 340 (1987). (emphasis added)

The preliminary hearing testimony does not exclude all possibilities of innocence. The Commonwealth is

never required to prove guilt to a mathematical certainty. A preliminary hearing is not a trial. Finding that the Commonwealth established a prima facie case in no way implies that a jury must find guilt, and does not even imply that the undersigned would find guilt (on the evidence presented to date) if seated as a member of defendant's jury. Finding a prima facie case is simply the conclusion that the time, trouble, and expense of a full trial is justified. This court is satisfied that the circumstantial evidence in this case is strong enough to justify the submission of the case to a jury of the defendant's peers:

"In convictions for murder, the sole, absolute and final responsibility for the verdict and its consequences rests with the jury. That responsibility comes from the performance of a public duty of the highest importance and is assumed when all the testimony, pro and con, is weighed and considered by them and a decision reached. Their conclusion cannot be reversed or set aside by this court unless there has been a trial mistake, or the evidence is insufficient to sustain the verdict as a matter of law." *Commonwealth v. Karmendi,* 328 Pa. 321, 324, 195 A. 62 (1937).

The motion for writ of habeas corpus is, therefore, denied.

This denial is without prejudice to the presentation of a motion for judgment of acquittal at the close of the Commonwealth's case in chief pursuant to Pa.R.Crim.P. 606(A)(1), if appropriate based on the evidence actually presented at trial.