# Commonwealth v. Gerhart

C.P. of Carbon County, nos. 441-CR-06, 440-CR-06.

*Joseph J. Matika, assistant district attorney,* for Commonwealth.

*Paul J. Levy,* for defendant.

ADDY, *J.,* March 8, 2007—On December 4, 2006, the defendants filed motions to dismiss the criminal informations in these cases, which are in the nature of a writ of habeas corpus, challenging the finding of a prima facie case at the preliminary hearing by the magisterial district judge. After a hearing held on January 12, 2007, we grant the motions to dismiss.

## FACTS

The Commonwealth relies on the transcript of the preliminary hearing held before Magisterial District Judge Bruce F. Appleton on July 26, 2006 to establish a prima facie case against the defendants. The Commonwealth's evidence, as contained in the transcript, is summarized below.

On July 29, 2004, Joshua, who was 1 year old, was picked up by his father, Joshua Gerhart, for a court ordered period of partial physical custody to last until August 1, 2004. During this period of partial physical custody, Joshua was staying at Mr. Gerhart's house along with his stepmother, Stephanie Gerhart, and two other children. On August 1, 2004, Joshua's mother, Amanda Lang, picked Joshua up at Mr. Gerhart's house. At the time that Ms. Lang picked Joshua up, Mrs. Gerhart was presumably watching Joshua, as she was the person who delivered Joshua to Ms. Lang. Mrs. Gerhart told Ms.

Lang that Joshua's diaper had just been changed and that he should be fine until he got his bath later in the evening. At this point, Ms. Lang took Joshua home.

Once home, Joshua played outside with his grandfather for a few minutes and then came inside to get his evening bath. When Ms. Lang undressed Joshua for his bath, she discovered bruising and swelling of his genitalia area that was not there when Joshua was sent to Mr. Gerhart's house on July 29. At this point, Ms. Lang screamed for her mother to come and her mother then took pictures of the affected area. Ms. Lang then took Joshua to the emergency room at Gnaden Huetten Hospital. From there, they were transferred to Lehigh Valley Hospital for more tests. Finally, Joshua was taken to see Andrea Taroli M.D., at Pegasus Child Advocacy Center in Carbondale, Pennsylvania. Dr. Taroli specializes in the evaluation of children who are alleged to be abused or neglected.

After examining Joshua, Dr. Taroli concluded, within a reasonable degree of medical certainty, that the swelling and bruising of Joshua's genitalia resulted from the genitalia being "grabbed as a whole, forcibly, and twisted. And essentially crushed . . . within the adult's hand." (Transcript of preliminary hearing, pp. 68-69.) Dr. Taroli further concluded that this bruising and swelling occurred a day or two prior to being discovered on August 1. This would place the date that the injury occurred on July 30 and/or July 31, which is during Mr. Gerhart's period of partial physical custody.

Subsequently, Mr. Gerhart and Mrs. Gerhart were both charged with conspiracy, 18 Pa.C.S. §903(a)(1), and recklessly endangering the welfare of a child, 18 Pa.C.S. §4304(a).

## DISCUSSION

The defendants' motions to dismiss challenge the finding by the magisterial district judge that a prima facie case was established against the defendants. Essentially, the defendants' motions are in the nature of a pretrial writ of habeas corpus.

In *Commonwealth v. Jackson,* 809 A.2d 411 (Pa. Super. 2002), the Superior Court reviewed the standard for reviewing a pretrial writ of habeas corpus as follows:

"We begin with *Commonwealth v. Morman,* 373 Pa. Super. 360, 541 A.2d 356 (1988), wherein it is written in relevant part: . . .

"As a starting point, we must recognize the importance and history of the writ of habeas corpus in our system of government. 'The writ of habeas corpus has been called the "great writ." It is an ancient writ, inherited from the English common law, and lies to secure the immediate release of one who is detained unlawfully.' . . .

"The writ of habeas corpus exists to vindicate the right of personal liberty in the face of unlawful government deprivation. . . .

"The purpose of a preliminary hearing is much the same as the purpose of the pretrial petition for habeas corpus relief. As has often been stated:

"The primary reason for the preliminary hearing is to protect an individual's right against unlawful arrest and detention. It seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection. . . .

"We find that the scope of evidence which a trial court may consider in determining whether to grant a pretrial

writ of habeas corpus is *not* limited to the evidence as presented at the preliminary hearing. On the contrary, we find that the Commonwealth may present additional evidence at the habeas corpus stage in its effort to establish at least prima facie that a crime has been committed and that the accused is the person who committed it. . . .

"In the pretrial setting, the focus of the habeas corpus hearing is to determine whether sufficient Commonwealth evidence exists to require a defendant to be held in government 'custody' until he may be brought to trial. To make this determination, the trial court should accept into evidence the record from the preliminary hearing as well as any additional evidence which the Commonwealth may have available to further prove its prima facie case. *Morman,* 541 A.2d at 358-60. (citations omitted) (emphasis in original)

"Further, at a habeas corpus hearing, the Commonwealth need not produce evidence of such character and quantum of proof as to require a finding by a jury of the accused's guilt beyond a reasonable doubt. But it should be such as to present 'sufficient probable cause to believe, that the person charged has committed the offense stated[.]' *Commonwealth ex rel. Scolio v. Hess,* 149 Pa. Super. 371, 374, 27 A.2d 705, 707 (1942). (citations omitted)" *Jackson, supra,* 809 A.2d at 416-17.

The Commonwealth's burden at a preliminary hearing is aptly summarized in 26 Standard Pennsylvania Practice 2d §132:357 as follows:

"At a preliminary hearing, the Commonwealth bears the burden of establishing at least a prima facie case that a crime has been committed and that the accused is probably one who committed it. *Commonwealth v. Phillips,* 700 A.2d 1281 (Pa. Super. 1997), *reargument denied,* (Oct. 29, 1997) and *appeal denied,* 555 Pa. 718, 724 A.2d

934 (1988). The Commonwealth establishes a prima facie case of the defendant's guilt at a preliminary hearing when the Commonwealth produces evidence that, if accepted as true, would warrant a trial judge to allow case to go to jury. *Commonwealth v. Martin,* 727 A.2d 1136 (Pa. Super. 1999), *reargument denied,* (April 23, 1999) and *appeal denied,* 1999 WL 791129 (Pa. 1999). At the preliminary hearing, the Commonwealth need not prove the elements of a crime beyond a reasonable doubt; rather, the prima facie standard requires evidence of the existence of each and every element of the crime charged. *Commonwealth v. Martin,* 727 A.2d 1136 (Pa. Super. 1999), *reargument denied,* (April 23, 1999) and *appeal denied,* 1999 WL 791129 (Pa. 1999); *Commonwealth v. Allbeck,* 715 A.2d 1213 (Pa. Super. 1998), *appeal granted* (Pa. October 22, 1999).

"To meet its burden at the preliminary hearing, the Commonwealth is required to present evidence with regard to each of the material elements of the charge and to establish sufficient probable cause to warrant belief that the accused committed the offense. *Commonwealth v. Phillips,* 700 A.2d 1281 (Pa. Super. 1997), *reargument denied,* (Oct. 29, 1997) and *appeal denied,* 555 Pa. 718, 724 A.2d 934 (1998)."

In the present case, the defendants have each been charged with conspiracy and recklessly endangering the welfare of a child. We shall review whether the Commonwealth has established a prima facie case on each charge, separately, below.

## A. *Conspiracy*

Section 903(a) of the Pennsylvania Crimes Code, 18 Pa.C.S. §903(a), provides as follows:

"A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

"(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

"(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S. §903(a).

A conspiracy can be established by circumstantial evidence; and conspiracies can be either express or tacit. See *Commonwealth v. Reed,* 276 Pa. Super. 467, 419 A.2d 552 (1980) (Commonwealth is not required to prove explicit or formal agreement in order to establish existence of conspiracy, which may be proven by circumstantial evidence); *Commonwealth v. Tumminello,* 292 Pa. Super. 381, 437 A.2d 435 (1981) (Commonwealth is not required to establish existence of conspiracy by direct proof or explicit or formal agreement); *Commonwealth v. Davalos,* 779 A.2d 1190 (Pa. Super. 2001), *appeal denied,* 567 Pa. 756, 790 A.2d 1013 (2001) (a conspiracy can be proven inferentially by showing the relation, conduct, or circumstances of the parties).

In the present case, there was simply no testimony or evidence presented at the preliminary hearing that would establish a prima facie case of conspiracy. Specifically, the transcript contains no evidence of an agreement, either express or tacit, between the defendants. Moreover, the transcript contains no evidence, either direct or circumstantial, that the defendants acted in concert. Con-

sequently, the conspiracy count against each defendant must be dismissed.

B. *Recklessly Endangering the Welfare of a Child*

Section 4304 of the Pennsylvania Crimes Code, 18 Pa.C.S. §4304, provides that:

"A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. §4304.

To support a conviction for endangering the welfare of a child, the Commonwealth must establish that the accused acted knowingly by demonstrating that each of the following elements are met:

(1) the accused is aware of his/her duty to protect the child;

(2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and

(3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare. See *Commonwealth v. Retkofsky,* 860 A.2d 1098 (Pa. Super. 2004); *Commonwealth v. Wallace,* 817 A.2d 485 (Pa. Super. 2002), *reargument denied, appeal denied,* 574 Pa. 774, 833 A.2d 143 (2003), *certiorari denied,* 124 S.Ct. 1610, 158 L.Ed.2d 251, 2004 WL 414109.

In *Commonwealth v. Miller,* 411 Pa. Super. 33, 600 A.2d 988 (1992), a case involving a charge of endangering the welfare of a child, the Superior Court addressed the elements for this charge as follows:

"Appellant has challenged, in particular, that the evidence presented at trial was insufficient to prove the intent element of the crime with which she [is] charged. 18 Pa.C.S. §4304 does, indeed, require proof of a specific intent element:

"*Section 4304. Endangering welfare of children*

"A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits a misdemeanor of the first degree if he *knowingly* [emphasis added] endangers the welfare of the child by violating a duty of care, protection or support.

"18 Pa.C.S. §4304. The criminal code further defines knowingly: (2) A person acts knowingly with respect to a material element of an offense when:

"(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

"(ii) if the element involves the result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

"18 Pa.C.S. §302(b)(2). Moreover, it is clear that section 4304 contemplates endangerment either by act or by omission to act. See *Commonwealth v. Cardwell,* 357 Pa. Super. 38, 43, 515 A.2d 311, 314 (1986), *allocatur denied,* 515 Pa. 573, 527 A.2d 535 (1987).

"In *Cardwell, supra,* this court established a three-prong standard for testing the sufficiency of evidence of the intent element under section 4304:

"We hold that evidence is sufficient to prove the intent element of the offense of endangering the welfare of a child, 18 Pa.C.S. §4304, when the accused is aware of

his or her duty to protect the child; is aware that the child is in circumstances that threaten the child's physical or psychological welfare; and has either failed to act or has taken actions so lame or meager that such actions cannot reasonably be expected to be effective to protect the child's physical or psychological welfare.

"*Cardwell,* 515 A.2d 311, at 315. If proof fails on any one of these prongs, the evidence must be found insufficient." *Miller, supra* at 37-38, 600 A.2d at 990.

In the present situation, in attempting to establish a prima facie case, the Commonwealth apparently relies upon the invocation of the exclusive custody doctrine. This doctrine provides that when an adult is given sole custody of a child of tender years for a period of time and, during that time, the child sustains injuries which may have been caused by a criminal agency, the factfinder may examine any explanation offered and if they find that explanation insufficient, they may reject it and find the person having custody responsible for the wounds. *Commonwealth v. Meredith,* 490 Pa. 303, 416 A.2d 481 (1980).

To invoke the exclusive custody doctrine however, the Commonwealth must show (1) serious injury or death; (2) that the injury was neither accidental nor self-inflicted; (3) that the injury was inflicted within a specific time period; and (4) that the defendant had exclusive custody of the victim during the time of the injury.

In the present case, although there is clearly prima facie evidence contained in the transcript of the preliminary hearing to establish that this young child was physically abused, the transcript does not contain sufficient evidence to establish, on a prima facie basis, which defendant, if either, committed the abuse. The transcript

indeed contains prima facie evidence of the first three prongs of the exclusive custody doctrine, but the transcript does not contain any evidence as to which defendant, if either, had exclusive custody and care of Joshua during the relevant time period. Further, there is no evidence contained in the transcript that either defendant made any admissions or engaged in any conduct that reveals a consciousness of guilt. Moreover, there is no evidence in the transcript from which a fact-finder could reasonably infer that either defendant was aware of the abuse or the subsequent visible manifestation of the physical injuries sustained by Joshua (the bruising and swelling). Therefore, the requisite element of "knowingly" in the charge of recklessly endangering the welfare of a child is lacking. Accordingly, the charge of recklessly endangering the welfare of a child against each defendant must also be dismissed.

## CONCLUSION

Based upon the evidence presented at the preliminary hearing, we are constrained to grant the defendants' motions to dismiss.

## ORDER

And now, March 8, 2007, upon consideration of the defendants' motions to dismiss, and after a hearing thereon, in accordance with the foregoing opinion, it is hereby ordered and decreed that the defendants' motions to dismiss are granted and, accordingly, the criminal informations in the above captioned cases are dismissed.