600 A.2d 988

**COMMONWEALTH of Pennsylvania**

**v.**

**Vanessa MILLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 15, 1991.

Filed Jan. 3, 1992.

34

Bernard L. Siegel, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before MONTEMURO, FORD ELLIOTT and HESTER, JJ.

FORD ELLIOTT, Judge:

Appellant was convicted under 18 Pa.C.S.A. § 4304, endangering welfare of children, following a non-jury trial. Upon conviction, appellant moved in timely fashion to arrest judgment and for a new trial. The trial Court denied these motions and appellant was thereafter sentenced to two years reporting probation. This appeal ensued. For the

reasons which follow, we reverse the trial Court's denial of the Motion to Arrest Judgment.

The relevant facts are straightforward and thoroughly tragic. On the evening of November 18, 1989, appellant took her twenty-two month old son, Clarence, and went to visit one Antonio Green. Antonio Green is the natural father of the child, although he and appellant are not husband and wife. Antonio Green resided in a three story rooming house. A restaurant was located on the first floor of the premises. The second level housed Eugenia Orr and her adult son, while Green occupied the top floor.

After meeting with Green at a neighborhood tavern, father, mother, and infant returned to the rooming house. Earlier in the day, Green had accompanied Eugenia Orr on a shopping trip to New York City; father, mother, and infant went directly to Ms. Orr's apartment on the second floor to examine that day's purchases. It appears that appellant was not as well acquainted with Eugenia Orr as was Green. After some time, appellant went upstairs to Green's room, leaving the child in the care of Green because the baby was playing with his father's new shoes. When the child tired of this activity, Green took him upstairs to appellant and then returned to the Orr apartment.

Appellant washed and changed the child and prepared the baby for bed. Green's room contained a single adult bed. Nearby was an electric space heater, apparently of a damaged condition but currently operating. Appellant put the child in the bed and then lay down with the baby until he fell asleep. Once her son was asleep, appellant decided to go down to the first floor restaurant to buy some juice for the child. She left Green's apartment with the child asleep in the bed, the space heater operating, and the door to the hallway stairs open. She also left her sweater in the apartment.

When she stopped on the second floor en route to the restaurant, Green asked appellant if she would "go clubbing" (visiting bars or nightclubs) with him. She declined, explaining that she had to watch the baby, and that she was

tired and not dressed for the occasion anyway. While she was on the first floor, Green yelled down to her through the common hallway, repeating his request and saying that Eugenia Orr had agreed to watch the baby. Thereupon appellant agreed to accompany him. She asked Green to bring down her jacket and did not return upstairs. Green asked appellant if he could wear her sweater. She agreed and he joined her downstairs wearing it. Green had, in fact, not spoken to Eugenia Orr about watching the child and she did not do so.

Green and appellant left the rooming house at approximately 1:00 a.m. and visited two clubs during their sojourn. During this time, they were joined by friends. One of these friends was called as a witness and testified that appellant continually fretted about the baby. Returning to the rooming house after 3:00 a.m., Green and appellant discovered police and fire trucks in the street outside and the building ablaze. The only death resulting from the conflagration was appellant's infant son, who died of smoke inhalation and burns. The space heater was determined to be the cause of the fire. Green was convicted of various criminal charges in connection with the child's death. Appellant was convicted of endangering the welfare of her child.

We begin our analysis by reiterating our standard of review:

> In reviewing a refusal to arrest judgment, we must consider whether the evidence was sufficient to uphold the verdict of the trial court. We must accept all the evidence and all reasonable inferences which may be drawn from that evidence upon which the fact finder could have based its verdict. If the evidence, viewed in the light most favorable to the verdict winner, is not sufficient to establish guilt beyond a reasonable doubt of the crime charged, then the motion should have been granted.

*Commonwealth v. McFadden*, 377 Pa.Super. 454, 547 A.2d 774, at 775 (1988).

■    Appellant has challenged, in particular, that the evidence presented at trial was insufficient to prove the intent element of the crime with which she was charged.  18 Pa.C.S.A. § 4304 does, indeed, require proof of a specific intent element:

### § 4304.  Endangering welfare of children

A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits a misdemeanor of the first degree if he *knowingly* [emphasis added] endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S.A. § 4304.   The criminal code further defines knowingly:

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves the result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(2).   Moreover, it is clear that § 4304 contemplates endangerment either by act or by omission to act.  *See Commonwealth v. Cardwell,* 357 Pa.Super. 38, 515 A.2d 311, at 314 (1986), allocatur denied, 515 Pa. 573, 527 A.2d 535 (1987).

In *Cardwell, supra,* this court established a three-prong standard for testing the sufficiency of evidence of the intent element under § 4304:

We hold that evidence is sufficient to prove the intent element of the offense of endangering the welfare of a child, 18 Pa.C.S.A. § 4304, when the accused is aware of his or her duty to protect the child;  is aware that the child is in circumstances that threaten the child's physical or psychological welfare;  and has either failed to act or has taken actions so lame or meager that such actions

cannot reasonably be expected to be effective to protect the child's physical or psychological welfare.

*Cardwell,* 515 A.2d 311, at 315. If proof fails on any one of these prongs, the evidence must be found insufficient.

Employing this test the *Cardwell* court found sufficient evidence of intent where a mother was aware that her child was being subjected to sexual abuse by the stepfather and took wholly ineffectual remedial actions. Specifically, she wrote letters to the stepfather expressing outrage and warning that she would not tolerate such conduct and she made an aborted attempt to move the child to a relative's house.

On the other hand, in *Commonwealth v. Campbell,* 398 Pa.Super. 116, 580 A.2d 868 (1990), the court found insufficient evidence to convict a husband and wife where they knew that their thirteen year old daughter was engaging in sexual activity with an adult and became pregnant against the express warnings of a physician. *Campbell* differed from *Cardwell* in that the parents did not allow the child to remain in a potentially dangerous situation; they simply failed to stop the child from surreptitiously seeking out sexual activity. The court was unwilling to extend culpability, noting that parents could not know everything about their child's activities nor was § 4304 intended to punish parents merely because their child becomes pregnant.

*Commonwealth v. Skufca,* 457 Pa. 124, 321 A.2d 889 (1974) presents a fact situation more akin to the case *sub judice.* Although *Skufca* dealt with a mother who had been charged under the former 18 P.S. § 4727, neglect or abandonment of a child, it is nevertheless useful for our purposes because of the similarity of its facts and because the Court indicated by footnote its belief in the applicability of the then new § 4304.[1] *Skufca,* 321 A.2d at 893, n. 7.

In *Skufca* a mother locked her two small children in a bedroom in their apartment and then left the house for an

---

1. We note also that 18 P.S. § 4727 has been repealed, superceded by 18 Pa.C.S.A. § 4304.

evening social engagement. The children and the apartment were left unattended. A fire started in the apartment house and the children suffocated when neighbors, learning that the children were trapped in the bedroom, were unable to free them. We believe that the facts of *Skufca* satisfy the three prongs of *Cardwell*. The mother was aware of her duty to protect her children. Indeed, by locking them in the bedroom, it is conceivable that she thought she was protecting them from various other dangers. However, although the mother could not have predicted the fire that occurred, she was certainly aware that by locking the children in the bedroom, she was placing them in an extremely hazardous situation in the event of fire. Moreover, attempting to protect her children by locking them in a bedroom constituted action too lame or meager to yield effective protection of the children's welfare.[2]

▮ Turning to the instant case, the trial court, sitting as factfinder, determined that when appellant left with Antonio Green to go clubbing, she was aware that her infant son was in the third floor room with the space heater on. The court found that by failing to question Green's statement that Eugenia Orr would watch the baby, appellant has evidenced the requisite intent for purposes of § 4304.[3] We have difficulty in finding that the evidence is sufficient to satisfy the *Cardwell* tripartite test. While it is undisputed that appellant was aware of her duty to protect her child, we cannot find as a matter of law that she was aware that

2. It is worth noting that in *Skufca,* the mother produced evidence to the effect that a neighbor had consented to watch the children in her absence. However, this evidence was contradicted by the Commonwealth and the jury resolved the credibility determination against the mother. The inference in *Skufca* would seem to be that such action on the mother's part, if believed, would have mitigated against a finding of criminal conduct.

3. We consider this finding significant in that it clarifies that it was not leaving the child in the room with the space heater that was the basis for culpability but rather appellant's inaction in failing to check on the babysitting arrangements. If appellant had, in fact, only left the room for a short period to get juice for the baby and the fire occurred, it is highly unlikely that appellant would find herself before the court today.

she had placed her child in circumstances that threatened the child's physical or psychological welfare or that her failure to check on the alleged babysitting arrangements was unreasonable under *Cardwell*.

The trial court specifically credited appellant's testimony that she believed Antonio Green when he told her that Eugenia Orr was watching her baby. The logical inference based on this finding is that appellant was not aware that she had left her child unattended. There was no evidence presented at trial that Green was an inherently dishonest person or that appellant had cause to disbelieve him in this instance.[4] It would appear that the trial court has based appellant's culpability under § 4304 not on the fact that appellant knowingly left her child alone, but rather that she should not have been so gullible as to believe Antonio Green. Undeniably, appellant may have exercised poor judgment on the night in question, and perhaps she is guilty of reckless or negligent conduct in connection with her son's death. However, this is not sufficient for a finding of guilt under § 4304. If appellant in fact believed that her son was in the care of another, she did not knowingly leave him unattended and thereby endangered, and her conduct cannot be adjudged criminal.

We consider our holding today to be a rational reflection of the purposes and aims of the criminal statute. As set out in *Commonwealth v. Taylor*, 324 Pa.Super. 420, 471 A.2d 1228 (1984):

> The [Pennsylvania] Supreme Court has said that Section 4304 was drawn broadly to cover a wide range of conduct in order to safeguard the welfare and security of children. It is to be given meaning by reference to the common sense of the community and the broad protective purposes for which it was enacted.

---

**4.** Although Green's testimony at trial was so disingenuous as to prompt the trial Court to describe him as "an unmitigated liar," (N.T. at 251), this does not lead to the conclusion that he had a history of lying such that appellant had reason to disbelieve him.

*Taylor,* 471 A.2d 1228, 1231 (citation omitted). Utilizing a common sense of the community approach to interpret the specific intent element of the statute, we find an implicit recognition that parents at times can make mistakes in judgment and that their children may be harmed as a result. However, for such mistakes to rise to the level of criminal culpability, parents must knowingly allow their children to be at risk with awareness of the potential consequences of their actions or of their failure to act. We cannot find the evidence sufficient to establish that type of criminal intent in the instant case.

Judgment of sentence reversed. Appellant discharged.