J-A17029-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v.  :
:
:
RAEVIN HODGES  :
:
Appellant  :  No. 1058 WDA 2017

Appeal from the Judgment of Sentence June 21, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0013581-2016

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:  FILED AUGUST 21, 2018

Raevin Hodges appeals from the judgment of sentence entered after a

stipulated nonjury trial, where she was convicted of one count of endangering

the welfare of children.[1]  After careful review, we reverse.

The trial court summarized the facts of this case as follows:

> In the mid-afternoon of October 10, 2016, [Hodges] was
> responsible for babysitting John Doe, age three, at the
> apartment of Doe's parents while Doe's parents went to the
> store.  The apartment was on the second floor of a building
> across from Westinghouse High School, in the City of
> Pittsburgh.  At the time, the school day had ended and
> students were exiting the building with school buses arriving
> and leaving the area.  The three-year-old child, drawn by
> the noise of the exiting students and buses, exited the
> apartment onto a balcony.  The balcony was approximately
> ten to fifteen feet [above] the ground level and was in an
> obviously poor and dangerous condition.  Rungs were
> missing from the front railing of the balcony, leaving gaps

_____

[1] 18 Pa.C.S.A. §4304(a)(1)

through which a child could easily fall. For several minutes the child remained on the balcony, at times putting his head through the rungs. [Hodges] did not stop the child from going on the balcony, monitor the child, or remove him from the balcony even when the child placed his head through the rungs. Instead, [Hodges] was completely immersed with her cell phone and was not paying attention to the child. As a result, the child fell through the missing rungs of the balcony to the concrete below. The child was rushed to Children's Hospital. Several witnesses observed the fall, and it was captured on video surveillance. Consequently, [Hodges] was charged as noted hereinabove.

Trial Court Opinion, 11/8/2017, 3-4 (citations and footnote omitted).

Following her conviction, the court sentenced Hodges to three years' probation. This timely appeal followed. Both Hodges and the trial court have complied with Pa.R.A.P. 1925.

Hodges raises only one issue on appeal:

1. Whether Ms. Hodges' conviction for Endangering Welfare of Children must be reversed, and her judgment of sentence must be vacated, when the Commonwealth failed to prove, beyond a reasonable doubt, that she acted with the requisite mens rea – i.e., that Ms. Hodges "knowingly" endangered the welfare of the minor child by violating a duty of care?

Hodges' Brief at 4.

Our standard of review when reviewing a sufficiency of the evidence claim is well established:

The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact finder. In addition, we note that the facts and circumstances

- 2 -

established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Brown, 23 A.3d 544, 556-60 (Pa. Super. 2011) (En banc) (internal quotations and citations omitted). Hodges does not dispute the factual findings of the trial court, and our independent review of the record also supports these findings. Thus, we must next determine whether the trial court's legal conclusions are correct.

In relevant part, the Endangering Welfare of Children (EWOC) statute provides that "[a] person, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1).

Section 302(b)(2) of the crimes code provides:

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(2).

In order to support a conviction under EWOC, the Commonwealth must demonstrate the tripartite test of Commonwealth v. Cardwell, 515 A.2d 311, 315 (Pa. Super. 1986):

(1) The accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

Id. See also Commonwealth v. Wallace, 817 A.2d 485, 490-91 (Pa. Super. 2002)

Our Court has explained that "statutes pertaining to juveniles such as this one are basically protective in nature and thus are necessarily drawn to cover a broad range of conduct in order to safeguard the welfare and security of our children. Whether particular conduct falls within the purview of the statute is to be determined within the context of the common sense of the community." Commonwealth v. Retkofsky, 860 A.2d 1098, 1099 (Pa. Super. 2004) (citations and internal quotations omitted).

The trail court reasoned that:

There was an open and notorious danger that [Hodges] was aware of by her repeated visits to this household and as confirmed by the pictures submitted on behalf of the Commonwealth. The danger was not unknown to [Hodges]. [Hodges] assumed supervision of this child voluntarily and,

thus, is responsible for the three-year-old's welfare and supervision under the circumstances such as they existed. Again, by [Hodges'] own admission, the three-year-old kept coming onto the porch and she failed to take measures to keep the child housed inside despite that open [and] notorious danger that lead [sic] to [the child's] fall. So the Court finds in this instance that the child was repeatedly drawn to the same activity that the defendant acknowledged brought her onto the porch, that is the school being discharged with buses, and that activity was one that would expect a three-year-old to be drawn to. In this instance, [Hodges] chose to pursue her own interest, being on a cell phone and a direct admission of [watching] students leaving the school rather than protecting the child in the face of that known notorious danger.

As such, the Trial Court found that [Hodges] knowingly violated her duty of care when she chose not to make any meaningful efforts to keep the child off of the balcony, but instead allowed him onto the balcony, and pursued her own social interests rather than the necessary supervision of the three-year-old child for which she was responsible. This evidence is sufficient to sustain [Hodges'] conviction of endangering the welfare of children.

Trial Court Opinion, 11/8/2017, 6-7. We disagree with the trial court's legal conclusions.

In arguing to the contrary, Hodges points to multiples cases where this Court found that sufficient evidence existed demonstrating the appellants knowingly endangered the welfare of children. See Commonwealth v. Ogin, 540 A.2d 549 (Pa. Super 1988) (en banc) (upholding EWOC conviction where parents flung child against wall, struck her, and burned her with food, despite the daughter not sustaining serious injury); Commonwealth v. Taylor, 471 A.2d 1228 (Pa. Super. 1984) (finding appellant was criminally culpable when he violated duty of care by sexually assaulting his daughter and her friend);

Commonwealth v. Retofsky, 860 A.2d 1098 (Pa. Super. 2004) (upholding EWOC conviction where father fled from police on an ATV at high speed with his son clinging to his back); Commonwealth v. Mackert 781 A.2d 178 (Pa. Super. 2001) (holding sufficient evidence existed to sustain EWOC conviction where appellant's children were unreasonably dirty and had numerous inflicted injuries). Hodges argues that in these other cases, "the various appellants' conduct was <u>inherently</u> extreme, depraved, and contrary to the accepted rules of morality." Hodges' Brief at 18. She claims the facts of this case are significantly different.

In analogizing her case, Hodges primarily relies on this Court's decision in Commonwealth v. Miller, 600 A.2d 988 (Pa. Super. 1992), where it held the Commonwealth failed to prove the appellant had knowingly endangered her child. In that case, the child's father informed the appellant-mother that the neighbor would babysit the child for the evening. Based on that information, the appellant-mother left the child at the home sleeping next to a space heater. However, unbeknownst the appellant-mother, the father had not secured a babysitter. The child died that evening when the space heater caused a fire. Reversing the appellant-mother's EWOC conviction, this Court found that insufficient evidence existed to satisfy the Cardwell tripartite test. This Court reasoned that although the appellant-mother was aware of her duty to protect the child, she was unaware she had placed the child in danger, and that her failure to confirm the babysitting arrangements was not unreasonable under Cardwell. Id. at 991.

Here, as in Miller, we find the facts of Hodges' case do not demonstrate that she knowingly endangered the welfare of the child. The Commonwealth asserts that Hodges' knew the child was in circumstances that could threaten his physical well-being because "she was aware of the poor condition of the porch railing which had several missing rungs, as well as the fact that the porch sat 10 to 15 feet above a concrete surface." Commonwealth's Brief at 12-13. Further, Hodges informed the police that "while babysitting, the child repeatedly tried to go onto the porch but she pushed him back inside." Id. at 13.

As part of our review of the record, we observed photographs of the porch at issue. While the photographs indeed depict a porch in less than sterling condition, we do not find it so dilapidated or inherently dangerous that the risk of physical injury would be readily apparent. Only a single rung was missing on the porch. Additionally, at the time of the incident, the area with the missing rung had three filled garbage bags and a box piled in front it, which made the gap even less of an obvious risk. In particular, the Commonwealth presented no evidence to suggest Hodges knew the child could fit through the missing rungs. Hodges did not divert her attention to her phone with the knowledge that in doing so the child's physical well-being would be in jeopardy.

We acknowledge that in the course of parenting or supervising a small child, one need only cease supervision momentarily for a disastrous incident to occur. As the Miller court so aptly stated,

> [u]tilizing a common sense of the community approach to interpret the specific intent element of the statute, we find an implicit recognition that parents at times can make mistakes in judgment and that their children may be harmed as a result. However, for such mistakes to rise to the level of criminal culpability, parents must knowingly allow their children to be at risk with awareness of the potential consequences of their actions or of their failure to act.

Id. at 992. This awareness of the risk applies equally to babysitters and others in charge of a child's well being.

Here, we find the facts indicate that, at most, a terrible accident occurred rather than an intended crime. A distinction must be drawn between negligent behavior and criminal conduct. Approaching Hodges' case from the common sense of the community standard, we determine that this was merely a mistake in judgment that arguably involved negligence. However, a showing of negligence is insufficient to support a finding of guilt under § 4304. Miller, supra. We do not consider the circumstances in Hodges' case the type of scenario that the legislature aims to criminalize through the EWOC statute.

As such, our review of the record and pertinent case law supports the conclusion that Hodges did not knowingly endanger the welfare of the child, and therefore the evidence is insufficient to uphold her conviction.

Judgment of sentence reversed. Hodges discharged.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/21/2018</u>