**[J-111-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 8 WAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered November |
| | : | 19, 2019 at No. 1281 WDA 2018 |
| v. | : | affirming in part and reversing in |
| | : | part the Judgment of Sentence of |
| | : | the Court of Common Pleas of |
| WAYLYNN MARIE HOWARD, | : | Allegheny County, entered August |
| | : | 1, 2018 at No. CP-02-CR-0008615- |
| Appellant | : | 2017. |
| | : | |
| | : | ARGUED: December 2, 2020 |

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

**JUSTICE TODD**                                    **DECIDED: AUGUST 25, 2021**

In this appeal by allowance, we consider whether evidence that a parent allowed her child to ride in a car-for-hire[1] without being restrained by a child safety seat (hereinafter, "car seat") is, without more, sufficient to support a conviction for endangering the welfare of children under 18 Pa.C.S. § 4304(a)(1). For the reasons that follow, we conclude that it was not. Accordingly, we reverse the Superior Court's decision, and vacate Appellant's conviction and judgment of sentence.

On February 15, 2017, Appellant, Waylynn Marie Howard (hereinafter, "Mother"), and her three-year-old daughter (hereinafter, "Child") were riding in a car-for-hire which was involved in a three-vehicle accident on Route 28, a state highway, near Pittsburgh.

---

[1] For purposes of this opinion, the term "car-for-hire" includes taxi-cabs, jitneys, and ride-share vehicles, but not rental cars in which the parent is the driver of the vehicle.

Specifically, the driver of Mother's car-for-hire rear-ended the car in front of her, which then hit another vehicle. At the time of the accident, Mother was sitting in the front passenger seat of the vehicle, and Child was sitting in the back seat, on the passenger side. There was no car seat in the vehicle, and none of the occupants were wearing seatbelts. None of the individuals involved sustained serious injuries. A police officer responded to the scene, and, based on his affidavit of probable cause, Mother was charged with reckless endangerment of another person, 18 Pa.C.S. § 2705,[2] and endangering the welfare of a child, *id.* § 4304(a)(1),[3] a misdemeanor of the first degree. At a stipulated bench trial based entirely on the affidavit of probable cause, Mother was convicted of both offenses. The trial court imposed a sentence of one year probation for Mother's conviction for endangering the welfare of a child, and no further penalty for her conviction for reckless endangerment. Mother appealed, challenging the sufficiency of the evidence to sustain both of her convictions.

In an unpublished memorandum opinion, a divided panel of the Superior Court reversed Mother's conviction for reckless endangerment of another person, finding her actions did not rise to the level of criminal recklessness. *Commonwealth v. Howard*, 1281 WDA 2018 (Pa. Super. filed Nov. 19, 2019). However, the panel affirmed Mother's conviction for endangering the welfare of a child under Section 4304(a)(1). In doing so,

---

[2] Under Section 2705, a person commits the crime of reckless endangerment of another person if she "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

[3] Section 4304(a)(1) provides: "(1) A parent, guardian, or other person supervising the welfare of a child under 18 years of age . . . commits an offense if [s]he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1). On February 9, 2021, House Bill 488 was introduced, proposing an amendment to Section 4304(a); however, the proposed amendment does not alter the requisite *mens rea* for a conviction under Section 4304(a)(1).

the panel explained that, in order to support a conviction for endangering the welfare of children, the Commonwealth must establish that the accused:

> (1) is aware of his or her duty to protect the child; (2) is aware that the child is in circumstances that threaten the child's physical or psychological welfare; and (3) has either failed to act or has taken actions so lame and meager that such actions cannot reasonably be expected to protect the child's physical or psychological welfare.

*Id.* at 3-4 (quoting *Commonwealth v. Foster*, 764 A.2d 1076, 1082 (Pa. Super. 2000).[4]

The panel concluded that the evidence supported Mother's conviction under Section 4304(a)(1) because, while the vehicle did not have an appropriate car seat, Mother "knowingly failed to fasten her daughter's seatbelt," despite an awareness that her conduct could result in harm to Child, as evidenced by the fact that she told the responding police officer that "she had feared that her daughter would fly from the back seat and hit the windshield."[5] *Id.* at 4. The panel specifically rejected Mother's argument that, pursuant to 18 Pa.C.S. § 302(b)(2)(ii),[6] in order to satisfy the culpability requirement

---

[4] This three-part test was first set forth by the Superior Court in *Commonwealth v. Cardwell,* 515 A.2d 311 (Pa. Super. 1986). Without specifically analyzing subsections (i) and (ii) of Section 302(b)(2), discussed *infra*, the court in *Cardwell* determined that the evidence was sufficient to support the mother's conviction under Section 4304(a)(2) because she was aware that her husband had sexually abused her child over a period of time, but took only feeble and ineffectual actions to protect the child, such as writing him two letters in which she stated such behavior would no longer be tolerated.

[5] As Mother notes in her brief, *see* Mother's Brief at 51 n.18, it is not clear from the record whether the car-for-hire had working seatbelts, and, if so, whether Mother fastened Child's seatbelt and Child subsequently unfastened it, or whether Mother failed to fasten Child's seatbelt it in the first instance. Regardless, the trial court based its conviction on Mother's failure to fasten Child in a car seat, not her failure to fasten Child's seatbelt. Further, Mother correctly observes that the National Highway Traffic Safety Administration recommends that seatbelts be used only on children above the age of eight, or when a child is large enough for the seatbelt to fit properly. *See* https://www.nhtsa.gov/equipment/car-seats-and-booster-seats. Thus, we focus our review on Mother's failure to secure Child in the appropriate car seat.

[6] A person acts knowingly with respect to a material element of an offense when:

of Section 4304(a)(1), Mother "would have had to be 'practically certain' that a car accident would occur in order to endanger her daughter's welfare." *Id.* at 4-5. The panel held that a conviction under Section 4304(a)(1) does not require that a child be in imminent threat of physical harm, but "only requires proof of circumstances that *could* threaten the child's physical or psychological welfare." *Id.* at 5 (quoting *Commonwealth v. Martir*, 712 A.2d 327, 330 (Pa. Super. 1998)) (emphasis original).

Judge Carolyn Nichols authored a concurring and dissenting opinion wherein she agreed with the reversal of Mother's reckless endangerment conviction, but dissented from the affirmance of Mother's conviction for endangering the welfare of a child. Judge Nichols opined that, although the evidence arguably supported Mother's conviction, the Crimes Code is not the "appropriate tool" for punishing Mother's conduct, and Mother's judgment of sentence was too harsh. *Howard*, 1281 WDA 2018, at 1 (Nichols, J., dissenting). In particular, Judge Nichols observed that, under the Motor Vehicle Code, Mother would have received a less severe sentence had she been the operator of the vehicle and failed to securely fasten her daughter in a passenger restraint system.[7] *See*

---

> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b)(2).

[7] Section 4581, titled "Restraint systems," provides:

> (a) Occupant protection.--
>     (1)(i)  Except as provided under subparagraph (ii), any person who is operating a passenger car, . . . and who transports a child under four years of age anywhere in the motor vehicle, including the cargo area, shall fasten such child securely in a child passenger restraint system, as provided in subsection (d).
>                                    * * *

75 Pa.C.S. § 4581(b)(1) (failure to comply with § 4581(a), which requires the driver of a vehicle to securely fasten a child under age four, commits a summary offense and upon conviction shall be sentenced to pay a fine of $75). Judge Nichols further noted that the increased use of ride-sharing services will require parents to take a "hard look at whether to accept a ride from a driver whose vehicle does not contain an appropriate car seat." *Howard*, 1281 WDA 2018, at 2 (Nichols, J., dissenting).

Mother filed a petition for allowance of appeal, and we granted review to consider whether Mother's conduct in allowing Child to ride in a car-for-hire without using a car seat[8] was sufficient to support a conviction for knowingly endangering the welfare of a child under 18 Pa.C.S. § 4304(a)(1), when there was no indication that the driver of the vehicle was driving in an unsafe manner.

Preliminarily, the instant matter involves the interpretation of a statute, and, thus, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Lynn*, 114 A.3d 796, 817-18 (Pa. 2015). It is axiomatic that, in interpreting a statute, this Court's objective is to ascertain and give effect to the intent of our General Assembly. 1 Pa.C.S. § 1921(a). The best expression of this intent is found in the statute's plain language. *Cagey v. Commonwealth*, 179 A.3d 458, 462 (Pa. 2018). We may not disregard the plain language under the guise of giving effect to its spirit. 1 Pa.C.S. § 1921(b); *Commonwealth v. Walls*, 926 A.2d 957, 962 (Pa. 2007). Only when the

---

   (iii) This paragraph shall apply to all persons while they are operators of motor vehicles where a seating position is available which is equipped with a seat safety belt or other means to secure the systems or where the seating position was originally equipped with seat safety belts.

75 Pa.C.S. § 4581(a)(1)(i) and(iii).

[8] We recognize that language of our order granting review referred to Mother's act of putting Child "in the backseat of a car-for-hire without a seatbelt or restraint system." Order, 5/11/20. However, for the reasons explained in note 5, *supra*, we focus our review on Mother's failure to secure Child in an appropriate car seat.

language of a statute is ambiguous may courts consider statutory factors to discern legislative intent. 1 Pa.C.S. § 1921(c); *Commonwealth v. McCoy*, 962 A.2d 1160, 1166 (Pa. 2009).

As noted above, Section 4304, which derived from Section 230.4 of the Model Penal Code, provides, in part, that "[a] parent, guardian, or other person supervising the welfare of a child under 18 years of age . . . commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1). Further, as stated in the 1972 Official Comment to Section 4304, the offense of endangering the welfare of a child applies to both affirmative acts and omissions. *See id.* § 4304, cmt. ("This section consolidates and simplifies the various provisions concerning crimes endangering the welfare of children. The offense involves the endangering of the physical or moral welfare of a child by an act or omission in violation of legal duty even though such legal duty does not itself carry a criminal sanction.").

With respect to the required *mens rea* for a conviction under Section 4304, pursuant to 18 Pa.C.S. § 302, entitled "General requirements of culpability," a person acts "knowingly" with respect to a material element of an offense when,

> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

*Id.* § 302(b)(2). Section 302(b)(2) also derives from the Model Penal Code.

Mother contends that the Superior Court erred in affirming her conviction under Section 4304(a)(1) because the evidence was insufficient to establish, pursuant to 18 Pa.C.S. § 302, that she knowingly endangered the welfare of Child. She first maintains that, in determining whether a parent or guardian acts knowingly for purposes of Section

4304, courts must consider whether the parental conduct at issue offends the "common sense of the community" and the "sense of decency, propriety and the morality which most people entertain." Mother's Brief at 13 (quoting *Lynn*, 114 A.3d at 818).[9] In arguing that her conduct did not offend the common sense of the community, Mother claims that she "faced a dilemma that many parents could face," namely, balancing the need to get her daughter home against the risks of placing her daughter in a car-for-hire without a car seat. *Id.* at 13. Emphasizing that there was no indication that the driver of the car-for-hire was operating the vehicle in an unsafe manner, no "warning signs" that an accident would occur, and "caselaw and national statistics show that accidents are uncommon in routine car rides," Mother submits that her decision to allow Child to ride in the vehicle without a car seat, even if mistaken in hindsight, did not offend the common sense of the community. *Id.*

Mother additionally argues that, in order to establish that she acted knowingly for purposes of Section 4304(a)(1), the Commonwealth was required to establish that she was practically certain that her conduct would result in the endangerment of Child's welfare, citing Section 302(b)(2)(ii). In this regard, Mother submits that the Superior Court has been inconsistent in its determination of the requisite *mens rea* for a conviction under

---

[9] The appellant in *Lynn* was a high-ranking official for an archdiocese who was convicted of endangering the welfare of children based on his placement of a priest, who had a known history of sexually abusing children, in an environment where there was a significant risk that he would reoffend. The Superior Court reversed Lynn's conviction, finding that Lynn had no direct supervision of the children he was found to have endangered. This Court reinstated Lynn's conviction, holding, *inter alia*, that the supervision element of Section 4304(a)(3) requires supervision of a child's welfare, but not direct supervision of the child. Although the focus of *Lynn* was whether the defendant supervised the children's welfare, we recognized that, in determining what conduct violates the statute, "[t]he common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it." *Lynn*, 114 A.3d at 818 (quoting Commonwealth v. *Marlin,* 305 A.2d 14, 18 (Pa. 1973)).

Section 4304(a)(1), in some cases seeming to require that both subsections (i) and (ii) of Section 302(b)(2) be established, and in other cases requiring that only one of those subsections be established.

For example, in *Commonwealth v. Miller*, 600 A.2d 988 (Pa. Super. 1992), the Superior Court held there was insufficient evidence to prove that a mother knowingly endangered the welfare of her child under *Cardwell's* tripartite test, *see supra* note 3, after her child, who was left unattended in an apartment, died when the apartment caught fire. The court noted that, based on a statement by the child's father, the mother reasonably believed a babysitter was watching the child. Explaining that, to be culpable under Section 4304, "parents must knowingly allow their children to be at risk with awareness of the potential consequences of their actions or failure to act," the *Miller* court concluded that the evidence did not establish that type of criminal intent by the mother. *Id.* at 992. Mother suggests the court's decision in *Miller* requires that both subsections (i) and (ii) of Section 302(b)(2) be established to prove intent. *See* Mother's Brief at 19.

Subsequently, in *Commonwealth v. Wallace*, 817 A.2d 485 (Pa. Super. 2002), the Superior Court held that evidence that the accused allowed his children to reside in squalid living conditions was sufficient to support a conviction under Section 4304. Significantly, although the court purported to utilize *Cardwell's* three-part test for determining intent, the *Wallace* court altered the second prong to require proof only that "the accused is aware that the child is in circumstances that *could* threaten the child's physical or psychological welfare," *Wallace*, 817 A.2d at 490-91 (emphasis added), as opposed to requiring proof of the accused's awareness that the child is in circumstances *that threaten* the child's physical or psychological welfare, thereby adopting a less-demanding standard of knowledge than originally required by *Cardwell*. Additionally, although the *Wallace* court recognized that Section 4304 requires an "awareness by the

accused that his violation of his duty of care, protection and support is 'practically certain' to result in the endangerment to his children's welfare," the court conceded that "[w]ithout a crystal ball no one can determine how, when and in what manner the conditions in [the accused's] house would cause harm to the children." *Id.* at 492. Mother submits that the *Wallace* court's language also requires the Commonwealth to establish that a parent be "practically certain" that his conduct will result in endangerment to a child in accordance with subsection (ii) of Section 302(b)(2).

Finally, in *Commonwealth v. Smith*, 956 A.2d 1029 (Pa. Super. 2008), the Superior Court upheld a father's conviction under Section 4304 based on his act of shaking his infant so violently that it resulted in brain damage. The court, applying *Wallace's* modified three-prong test, concluded that "[t]he 'knowing' element of the crime applies to the general issue of whether the defendant knew that he was endangering the child's welfare, not whether the defendant knew that he would cause any particular result." *Id.* at 1038. The court further opined: "It takes nothing more than common sense for an adult, let alone an experienced father such as [a]ppellant, to know that violently shaking an infant child with enough force to cause an abusive head trauma could threaten the child's physical and/or psychological welfare." *Id.* at 1038-39 (footnote omitted). In Mother's view, the *Smith* decision suggests that proof only of Section 302(b)(2)(i) is required to establish the necessary *mens rea* for Section 4304. *See* Mother's Brief at 18.

Mother asserts that, notwithstanding the various inconsistent tests employed previously by the Superior Court, the court in this case did not follow any of the tests, instead concluding that the evidence was sufficient to sustain Mother's conviction under Section 4304(a)(1) because she was "aware that her failure to properly restrain her daughter could cause harm in the event of an accident," and, further, that a conviction "only requires proof of circumstances that *could* threaten the child's physical or

psychological welfare." Mother's Brief at 19 (quoting *Howard*, 1281 WDA 2018 at 4-5 (emphasis original)). According to Mother, the Superior Court's reasoning not only conflicts with the express language of Section 302(b)(2), but ignores the third prong of the test recognized by this Court in *Lynn* – namely, that the accused's actions or inactions "cannot reasonably be expected to protect the child's welfare." *Id.* at 20 (quoting *Lynn*, 114 A.3d at 819).[10]

Finally, acknowledging that she failed to raise the argument below, Mother asserts that, pursuant to the plain language of 75 Pa.C.S § 4581(f),[11] evidence that Child was not in a car seat was statutorily inadmissible to establish a violation of Section 4304(a)(1).

---

[10] In an *amicus* brief filed in support of Mother, the Defender Association of Philadelphia ("DAP") initially argues that the three-part test the Superior Court panel below applied is flawed, in that it disregards the requirement of the statute that a person knowingly endanger the welfare of a child. DAP's Brief at 21-22. It further asserts that the third prong of the test is broad and ambiguous, and does not even appear in Section 4304(a)(1). *Id.* at 23. Citing the dissenting opinion in *Lynn*, *supra*, DAP also maintains that the Superior Court's test does not provide fair notice of what constitutes criminal conduct. *Id.* at 25-26.

DAP additionally suggests that the "common sense of the community" standard depends on a variety of factors, including race, class, ethnicity, geographic region, and age of the parents. It submits that standards also may change over time, noting that parental conduct which was viewed as acceptable in the past − for example, allowing a child to play unsupervised outside or remain in the car when the parent ran into the store, or piling kids into the back of a car − may now be subject to criminal prosecution. Finally, speculating that Mother may have been riding in a jitney, a car-for-hire which "operate[s] mainly in poor neighborhoods" and is "less likely to have safety features," DAP suggests that upholding convictions in cases like the one *sub judice* will disproportionately affect low-income and minority families. *Id.* at 4.

[11] Subsection (f) of 75 Pa.C.S. § 4581, titled "Restraint systems," provides:

The requirements of this subchapter [*see supra* note 7] or evidence of a violation of this subchapter are not admissible as evidence in a criminal proceeding except in a proceeding for a violation of this subchapter. No criminal proceeding for the crime of homicide by vehicle shall be brought on the basis of noncompliance with this subchapter.

75 Pa.C.S. § 4581(f).

The Commonwealth counters that the evidence was sufficient to support Mother's conviction under Section 4304(a)(1) under the three-part test set forth by the Superior Court in *Cardwell* and *Wallace*. Specifically, the Commonwealth argues that, as Child's mother, Mother has a duty to care for the child's safety, and, when faced with the decision of whether to place Child in the car-for-hire without a car seat, Mother:

> could have utilized the option of restraining the child with the seatbelt. By doing so, she would have evidenced her duty of care to the child, and taken a reasonable step to discharge that duty. She did not do so, however, but instead knowingly disregarded her duty of care. It is not the Commonwealth's position that a parent must always carry a child safety seat with them to avoid events such as this, where the parent is forced by circumstance to either hire or accept a ride in a third party's vehicle that is not equipped with a child safety seat. Rather, parents such as [Mother] have other options in accepting such a ride, seatbelts. At a minimum, [Mother] should have, and was required, to at least attempt to protect her child by utilizing the restraint system that was available to her, a seatbelt, but failed to do so. It is for this reason[] that the Commonwealth submits that this evidence was sufficient to support the conviction for endangering the welfare of a child.

Commonwealth's Brief at 10-11. The Commonwealth further submits that, notwithstanding Mother's argument that vehicle accidents are uncommon, the legislature requires that all vehicles include passenger restraint systems and imposes penalties for failure to use them. *Id.* at 11 (citing 75 Pa.C.S. § 4581).

With regard to Section 302(b)(2), the Commonwealth contends that subsections (i) and (ii) are separate and distinct, and that proof of either is sufficient to establish that a person acted knowingly. According to the Commonwealth, Mother's prosecution "was premised on the first clause, the nature and attendant circumstances of her actions," and, therefore, it "was only required to prove [Mother] was aware of her duty of care while

transporting her daughter in a motor vehicle," not that she knew that a particular result was practically certain. Commonwealth's Brief at 12-13.

For the reasons explained below, we reject the Commonwealth's suggestion that, in order to establish a violation of Section 4304(a)(1), the Commonwealth was required to prove only that Mother was aware of her duty of care when transporting Child in the car-for-hire. Rather, we hold that, pursuant to Section 302(b)(2), the Commonwealth was required to prove that Mother was aware her conduct endangered the welfare of Child.

To reiterate, under Section 302(b)(2), a person acts "knowingly" with respect to a material element of an offense when:

> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b)(2).[12] This language mirrors the definition of "knowingly" set forth in

---

[12] Section 1.13 of the Model Penal Code provides the following definition of "element of an offense":

> "element of an offense" means (i) such conduct or (ii) such attendant circumstances or (iii) such a result of conduct as
> (a) is included in the description of the forbidden conduct in the definition of the offense; or
> (b) establishes the required kind of culpability; or
> (c) negatives an excuse or justification for such conduct; or
> (d) negatives a defense under the statute of limitations; or
> (e) establishes jurisdiction or venue.

Model Penal Code, § 1.13(9). A "material element of an offense" is an element that "does not relate exclusively to the statute of limitations, jurisdiction, venue, or to any other matter similarly unconnected with (i) the harm or evil, incident to the conduct, sought to be prevented by the law defining the offense, or (ii) the existence of a justification or excuse for such conduct." *Id.* § 1.13(10).

Section 2.02(2)(b) of the Model Penal Code.[13]

As at least one commentator has observed, the Model Penal Code, unfortunately, does not "define adequately the three kinds of objective elements of an offense − that is, to distinguish conduct, circumstance, and result elements."  Robinson, Paul, H. and Grall, Jane A., *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond*, 35 Stanford Law Review 681, 706 (1983). The absence of these definitions "severely undercut[s] the usefulness of defined culpability terms."  *Id.* at 707.

Further, this Court has not previously analyzed the distinctions between nature-of-conduct, circumstances-of-conduct, and result-of-conduct elements, nor have we addressed the culpability standards set forth in Section 302 in the specific context of Section 4304.  However, in *Commonwealth v. Moser*, 549 A.2d 76 (Pa. 1988), we considered the application of Section 302(b)(2) as it pertained to a finding of an aggravating circumstance under 42 Pa.C.S. § 9711(d)(7) in support of a death sentence, which applies when "in the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense."  The appellant in *Moser* met his ex-wife and his two daughters outside of his car in a church parking lot, for the purpose of exchanging custody so that he could spend the day with his daughters.  After the girls entered his car and his ex-wife began to walk away, the appellant removed a rifle from the back of his car and shot one of his daughters in the head.  When the appellant's ex-wife heard the shot, she turned toward him, and he shot her in the chest.  The appellant then turned back to the car and shot his other daughter.  None of the victims survived.

---

[13]Section 2.02(7) of the Model Penal Code additionally provides: "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a *high probability* of its existence, unless he actually believes that it does not exist."  Model Penal Code, § 2.02(7) (emphasis added).

In rejecting the appellant's claim that the record did not support a finding of the grave risk of death aggravator, we explained that, under Section 302(b)(2)(i) and (ii):

> in order to satisfy the knowledge requirement, *a person must be aware of the nature of his conduct and the certainty with which the conduct will cause such a result.* Applying § 302(b)(2) to § 9711(d)(7) of the Sentencing Code in order to satisfy the knowledge requirement of subsection (d)(7), it must be proven that a perpetrator was aware of his conduct and the effect of his conduct. In other words, a person must be aware of the gravity of the acts committed and the effect of those acts.

*Moser,* 549 A.2d at 79 (emphasis added).

We noted in *Moser* that the appellant's purchase of rifle primarily designed for hunting big game, which had a range of approximately 500 yards, and the fact that there was one individual in a car parked next to the appellant's, and another individual approximately 150 yards in front of the appellant, behind his ex-wife, at the time of the shootings, was sufficient to demonstrate that appellant was aware that his conduct created a grave risk of harm to individuals beyond the targeted victims.

Regarding the offense at issue in the case *sub judice*, as noted above, a person violates Section 4304(a)(1) if he "knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1). "Endanger" is defined, *inter alia*, as "to bring into danger or peril," or "to create a dangerous situation." https://www.merriam-webster.com/dictionary/endanger. Thus, the material element of Section 4304(a)(1) is the creation of a perilous or dangerous situation, much like the creation of a grave risk of harm was the material element of the Section 9711(d) aggravating circumstance that was at issue in *Moser.* The creation of the perilous or dangerous situation in the instant case, and the creation of the grave risk of harm in *Moser*, were each the *result* of the actor's conduct. As a result, in accordance with *Moser*, we hold that, in order to satisfy the knowledge requirement of Section 4304(a)(1), the

Commonwealth was required to prove both that Mother was aware that Child should have been restrained in a car seat when riding in the car-for-hire, and that Mother was aware that, by allowing Child to ride in the car-for-hire unrestrained, she placed Child in a perilous or dangerous situation.[14] We emphasize that, for purposes of Section 4304, the requirement of Section 302(b)(2)(i) that the accused be "aware that it is practically certain that his conduct will cause such a result" does not require that he be certain of a particular harm or injury − for example, in this case, a car accident. Again, as it pertains to Section 4304, the *result* of the actor's conduct is the creation of a dangerous *situation*, which is what Section 4304(a)(1) seeks to prevent.

With this standard in mind, we next consider whether the Commonwealth met its burden of establishing, beyond a reasonable doubt, that Mother was aware that allowing Child to ride in a car-for-hire without a car seat would endanger the welfare of Child.[15] As noted above, *see supra* note 9, in determining whether a parent or guardian's conduct is sufficient to support a conviction under Section 4304(a)(1), courts must consider whether

---

[14] As explained by President Judge Emeritus Kate Ford Elliott in *Miller*:
> Utilizing a common sense of the community approach to interpret the specific intent element of the statute, we find an implicit recognition that parents at times can make mistakes in judgment and that their children may be harmed as a result. However, for such mistakes to rise to the level of criminal culpability, parents must knowingly allow their child to be at risk with awareness of the potential consequences of their actions or of their failure to act.

600 A.2d at 992.

[15] In its brief, the Commonwealth asserts that Mother "has never alleged that she was unaware of her duty to restrain her child, nor could she. In fact, she admitted to the officer her fear that she was afraid that her daughter could have flown over the seat and into the windshield during the accident." Commonwealth Brief at 13. The Commonwealth fails to explain, however, how this statement, which was made *after* the accident occurred, is probative of Mother's state of mind at the time she placed Child in the vehicle. Moreover, it was the Commonwealth's burden to prove that Mother was aware of her duty to place Child in a car seat.

the conduct at issue offends the "common sense of the community" and the "sense of decency, propriety and the morality which most people entertain." *Lynn*, 114 A.3d at 818 (citation omitted).[16]  Mother reiterates that she allowed Child to ride in a car-for-hire without a car seat because she needed to take Child home and it did not appear to her that the driver of the car was operating the vehicle in an unsafe manner.  According to Mother, when her conduct is viewed in the context of whether it offends the common sense of community, the evidence was insufficient to demonstrate that she was aware that her conduct endangered Child's welfare.  We agree.

In finding Mother guilty of endangering the welfare of Child, the trial court commented that the likelihood of an accident is "high enough that the Commonwealth of Pennsylvania had to get a federal statute, requiring that children below a certain age to be in a car seat for their safety, and adults to wear seatbelts."  N.T. Trial, 8/1/18, at 12-13.[17]  The court further noted that parents cannot "leave the hospital with a child without having the proper car seat properly installed," *id.* at 17, and reasoned:

> [i]t's clear for many years now that you can't put your child in a car, and drive that car safely on a state highway without having the child properly restrained in a car seat that's age appropriate.  If the driver is held to that level of care for any child placed, certainly the mother of that child would be held at the same level of care.

---

[16] In his concurring opinion, Justice Wecht suggests that this Court should abandon reliance on this standard in evaluating whether a parent's or guardian's conduct is sufficient to support a conviction for endangering the welfare of a child under Section 4304(a)(1).  Concurring Opinion (Wecht, J.) at 2.  However, as Justice Wecht acknowledges, this standard has developed over time, and most recently was applied by this Court in *Lynn*, in 2015.  As neither party in the instant case has asked this Court to reconsider our decision in *Lynn*, or reject the standard reiterated therein, we conclude that further consideration of Justice Wecht's thoughtful observations as to the continued vitality of the standard should be deferred to a future case where the question is squarely before us and the parties have fully brief the issue.

[17] This would appear to be a misstatement by the trial court, as 75 Pa.C.S. § 4581 is a Pennsylvania, not a federal, statute.

*Id.* at 21.

Emphasizing its reliance on Section 4581, in its opinion pursuant to Pa.R.A.P. 1925(a), the trial court concluded that Mother violated "a duty of care to her three-year-old child by placing her unrestrained in a 1000-2000 pound vehicle careening down a major roadway at a significant rate of speed," and that "duty of care is codified at 75 Pa.C.S. § 4581." Trial Court Opinion, 11/26/18, at 4.

The trial court's observations notwithstanding, our review of the record reveals that the Commonwealth failed to demonstrate that, when viewed through the "common sense of the community" and the "sense of decency, propriety, and the morality which most people entertain," Mother's conduct in allowing Child to ride in the car-for-hire without a car seat, absent any other indicia of dangerousness, endangered the welfare of Child. Initially, we note the Commonwealth did not present any evidence regarding the circumstances of Mother's decision to allow Child to ride in the car-for-hire without a car seat. Nor was any evidence presented regarding the community in which Mother lived or the other options for transportation that may have been available to her. Absent such evidence, and without other evidence to suggest that Mother's decision to use a car-for-hire, in and of itself, endangered the welfare of Child, it appears the Commonwealth seeks a rule that a parent or guardian's failure to use child safety restraints when allowing a child to ride in a vehicle constitutes a *per se* violation of Section 4304(a)(1). We decline this invitation.[18]

---

[18] In her dissent, Justice Mundy suggests that "Mother's failure to secure her three-year-old toddler in a car seat or at least fasten the seatbelt restraint or at a very minimum sit with her toddler in the backseat," when viewed through the common sense of the community, is sufficient to establish that Mother knowingly endangered Child. Dissenting Opinion (Mundy, J.) at 1-2. She further opines that, in light of the fact that we have described Section 4304 as protective in nature, such that it must be construed to effectuate its broad purpose of sheltering children from harm, "the very fact that child was alone unrestrained in the backseat of a car during a car accident is proof enough that a

In this regard, Section 4581 of the Vehicle Code informs our conclusion as to whether Mother's conduct was contrary to the common sense of the community, and the sense of decency, propriety, morality which most people entertain, as the legislature's enactment of a statute is certainly an expression of the standard of conduct to which society does, and is expected to, aspire. Section 4581(a) requires any person operating a vehicle and transporting a child under the age of four to "fasten such child securely in a child passenger restraint system." 75 Pa.C.S. § 4581(a)(1). A person who fails to comply with this section commits a summary offense and, if convicted, may be fined $75. *Id.* § 4581(b).

We first note that, despite the fact that the legislature has mandated that individuals who operate a vehicle and transport a child under the age of four securely fasten the child in a child passenger restraint system, it has not enacted a corresponding statute imposing a similar duty on a non-driving parent or guardian. Moreover, even a driver who violates Section 4581 may be charged with only a summary offense, and, where an individual who is cited for violating Section 4581 "displays evidence of acquisition" of a car seat to a judge prior to or at the individual's hearing, the charges will be dismissed, and the fine waived. 75 Pa.C.S. § 4581(c).

Indeed, we observe that evidence of a violation of Section 4581 is inadmissible as

car seat, a seat belt, or parent supervision in the back seat with the toddler should have been employed. The Mother's failure to take obvious and prudent steps to avoid danger in the unlikely but ever-present possibility of a car accident resulted in placing her toddler in a situation of avoidable harm." *Id.* at 2-3. Respectfully, the dissent's position is premised on facts which are not in evidence in the record, including the availability of working seatbelts in the car-for-hire in which Mother and Child were riding. *See supra* note 5. Furthermore, although not relevant herein, the dissent fails to acknowledge or address Mother's observation that various organizations, including the National Highway Traffic Safety Administration, counsel *against* the use of seatbelts on children under the age of eight, unless the child is large enough for a seatbelt to fit properly. *See id.* Finally, the dissent provides no support for its suggestion that a parent sitting next to a child would provide any measure of safety to the child in an accident.

evidence in any criminal prosecution, except in a proceeding for a summary offense under Section 4581. *Id.* § 4581(f).[19] Thus, a driver who transports a child in a vehicle without securing the child in a car seat may be prosecuted only for a summary offense under Section 4581, and is not subject to prosecution for any other crime – including, for example, endangering the welfare of a child – based on that evidence alone. As a result, had Mother been driving the vehicle in which Child was riding unrestrained, Mother could not have been charged with endangering the welfare of Child based solely on her failure to fasten Child in a car seat.[20][21]

Despite the fact that use of a car seat is recommended by numerous organizations, including, for example, the Pennsylvania Department of Transportation, the National Highway Traffic Safety Administration, and the American Association of Pediatrics, the legislature has deemed a driver's failure to utilize seatbelts or car seats when transporting a child to be a summary offense and nothing more, and it has not otherwise expressly

---

[19] *See supra* note 11.

[20] In her brief, Mother highlights that, pursuant to Section 4581(f), evidence of a violation of Section 4581(a) may not be used as evidence in a criminal proceeding, except in a proceeding for a violation of Section 4581. Acknowledging that she failed to raise this claim below, Mother nonetheless submits that, under the plain language of Section 4581(f), "the Commonwealth did not even have the authority to charge [her]" with endangering the welfare of a child. Mother's Brief at 41. Even absent Mother's concession that she waived this claim, *id.* at 43, we note that Section 4581 expressly applies to drivers of vehicles, and Mother was not driving the vehicle. Nevertheless, as discussed above, we find Section 4581(f) to be probative of the common sense of community.

[21] The dissent acknowledges the correctness of this analysis, but suggests that "it does not contemplate what may happen when a driver places a toddler alone in the back seat unrestrained without any supervision." Dissenting Opinion (Mundy, J.) at 3. Section 4581, however, governs both car seats *and* seat belts, referring broadly to a "child passenger restraint system." Thus, regardless of whether the failure involved the use of a car seat or a seat belt, the result would be the same: Mother would not be subject to prosecution unless she was the driver of the vehicle, and then, only for a summary offense. Moreover, Section 4581 does not explicitly or implicitly require "supervision," and the dissent improperly creates this concept out of whole cloth.

criminalized a parent or guardian's failure to utilize the appropriate child restraints when he or she is not the driver of the vehicle. We cannot conclude that the community views Mother's conduct in allowing Child to ride in the car-for-hire without a car seat in a harsher light than does the General Assembly, subjecting her to a first-degree misdemeanor conviction for child endangerment.[22] Accordingly, we hold that Mother's conduct in this case did not offend the common sense of the community, and, consequently, that the Commonwealth did not establish that Mother knowingly endangered the welfare of Child.[23]

For all of the foregoing reasons, we conclude that Mother's act of allowing Child to ride in a car-for-hire without a car seat was, without more, insufficient to support a conviction for endangering the welfare of a child under Section 4304. Thus, the Superior Court's affirmance of Mother's conviction for endangering the welfare of a child is reversed, and her conviction and judgment of sentence are vacated.

Justice Donohue joins the Opinion Announcing the Judgment of the Court.

Justice Saylor files a concurring opinion.

Justice Dougherty files a concurring opinion in which Chief Justice Baer joins.

Justice Wecht files a concurring opinion.

Justice Mundy files a dissenting opinion.

---

[22] A person convicted of a first-degree misdemeanor may be sentenced to a term of imprisonment of up to five years. 18 Pa.C.S. § 1104(1). Under certain circumstances, the offense of endangering the welfare of a child may be graded as high as a first-degree felony. *See id.* § 4304(b)(1), (2) (providing that, where the actor's conduct creates a substantial risk of death or serious bodily injury and was part of a course of conduct, it constitutes a second-degree felony, and, further, if a child is under the age of six at the time of the offense, the offense shall be increased one grade).

[23] In light of the increased use of ride-share services, the enactment of clear laws pertaining to a parent or guardian's duty regarding the use of car seats may be warranted. However, that is a task for the legislature.